COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-009-CV

NATHAN A. WATSON COMPANY APPELLANT

   AND APPELLEE

V.

EMPLOYERS MUTUAL CASUALTY APPELLEES

COMPANY AND HIGHLANDS       AND APPELLANTS

INSURANCE COMPANY 

------------

FROM THE 153RD  DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

I.  Introduction

In one issue, Appellant Nathan A. Watson Company (“Watson”) asserts that the trial court erred by not enforcing a contractual provision which requires the nonprevailing parties, Appellees Employers Mutual Casualty Company (“EMC”) and Highlands Insurance Company (“Highlands”), to reimburse the prevailing party, Watson, its reasonable and necessary attorney’s fees and all other reasonable costs, expenses, and charges associated with the defense of the suit.  We agree and reverse and remand in part on Watson’s issue.  As Cross-appellants, EMC and Highlands assert that the trial court erred by granting Watson’s motion to extend the postjudgment deadlines.  We disagree and affirm in part as to EMC’s and Highlands’s counter-point.    

II.  Factual and Procedural Background

This is the subdivision subrogation case.  In August 1995, Watson and Sovereign Homes Corporation (“Sovereign”) entered into an agreement for the sale and purchase of lots (“Lots Purchase Agreement”).  Neither EMC, nor Highlands was a party to the Lot Purchase Agreement.  According to Watson, the contract provided that it would develop real property, known as Hunter Pointe, located in Arlington, Tarrant County, Texas.  The contract further provided that Sovereign would have the right to purchase a number of lots in each phase as the phases were completed and build homes on these lots.

Watson was responsible for the development of the raw land under the contract, but did not play a role in the design of the homes, their foundations, or the construction of those homes.  Sometime later, a number of homes in the development began experiencing foundation problems, and Sovereign, using insurance monies from its insurers, Highlands and EMC, either repurchased those homes from the homeowners or made repairs.  Hence, Highlands and EMC held subrogation rights regarding these monies.
(footnote: 1)
 Litigation subsequently ensued between various parties, Watson being one of several defendants and EMC being among several plaintiffs.  According to individual plaintiff Diana K. Strauss’ (“Strauss”) ninth amended petition, she was the assignee for the claims of Sovereign, Sovereign having assigned its claims and interests “in this lawsuit” to Strauss.  Also, according to plaintiff EMC’s ninth amended petition, 

EMC had issued policies of insurance to Sovereign.  These policies provided coverage, 
inter alia, 
for Sovereign’s damages that are the subject of this lawsuit . . . .  By this Petition, EMC is making a direct claim against the Defendant for, among other things, EMC’s damages, attorney’s fees, costs, and interest.  EMC is subrogated to the rights of Sovereign in the amount of its policy compensation to and/or on behalf of Sovereign, as well as to the rights of Sovereign and/or its assignees, pursuant to the policies and/or other written agreements, at common law and/or in equity.

Highlands intervened in the suit as “the subrogee for Sovereign Homes Corporation” according to its Intervenor’s fourth amended petition.

In sum, Sovereign, through Strauss, Highlands, and EMC, filed suit against Watson and others.  According to Watson, Sovereign’s “uninsured” claims were settled, but EMC’s and Highlands’ subrogation claims proceeded to trial.  The pertinent part of paragraph 20.H. of Sovereign’s agreement with Watson, which agreement was sued upon by EMC and Highlands through their subrogation rights, read, 

Should either party employ an attorney or attorneys to enforce any of the provisions hereof, or to recover damages for the breach of this Agreement, the non-prevailing party in any final judgment agrees to pay the other party all reasonable costs, charges and expenses, including attorney’s fees, expended or incurred in connection therewith.

At trial, the amount, reasonableness, and necessity of Watson’s attorney’s fees were stipulated to by EMC and Highlands.  At the conclusion of trial, the court submitted questions of fact to the jury, and the jury responded on September 1, 2005, by finding for Watson on all counts.  No damages were awarded to any party.

On November 18, 2005, the trial court signed the final judgment in the underlying action.  In the judgment, the trial court formalized the verdict of the jury and denied Watson’s request for its attorney’s fees and costs to be paid by the nonprevailing parties, EMC and Highlands.  The court did order that all costs of court were taxed against EMC and Highlands. 

On January 6, 2006, Watson filed a verified motion to extend the postjudgment deadlines in the trial court seeking additional time to file its notice of appeal.  In this motion, Watson claimed that the first notice its attorney received of the trial court’s judgment was a copy of the signed judgment and a letter from the court.  Both were dated November 18, 2005, but were filed stamped and mailed by the clerk of the court December 9, 2005.  Moreover, Watson claimed its attorney did not actually receive the judgment and letter until December 12, 2005.  After a hearing, the trial court entered an order extending the deadline for Watson to file notices of appeal or other postjudgment motions until January 11, 2006.
(footnote: 2)
 Watson filed its notice of appeal on January 9, 2006 involving the question of what, if anything, the nonprevailing parties, EMC and Highlands, owed Watson under paragraph 20.H. of the Lot Purchase Agreement.  After objecting to the verification of Watson’s motion to extend the dismissal deadlines, EMC and Highlands then filed their notice of cross-appeal on February 28, 2006, claiming the trial court erred by extending the postjudgment deadlines.

III. Verified Motion to Extend Postjudgment Deadlines

Because EMC’s and Highlands’ cross-point bears on our jurisdiction to decide Watson’s issue, we shall address their cross-point first.  EMC and Highlands assert that the trial court erred by granting Watson’s verified motion to extend the postjudgment deadlines because the record does not reflect any direct and admissible evidence that Watson failed to receive notice of the judgment before December 12, 2005.  We disagree.  

A. Standards of Review 

Postjudgment procedural timetables run from the day a party receives notice or actual knowledge of the judgment, rather than the day the judgment is signed, if the party (1) complies with the sworn motion, notice, and hearing requirements mandated by Rule 306a(5), and (2) proves it received notice of the judgment more than twenty but less than ninety-one days after it was signed.  
See
 
Tex. R. Civ. P. 
306a.  Specifically, Rule 306a(5) requires that the party alleging late notice of judgment file a sworn motion with the trial court establishing the date the party or its counsel first learned of the judgment
.  Tex. R. Civ. 
P. 306a(5); 
see also Mem’l Hosp. of Galveston County. v. Gillis
, 741 S.W.2d 364, 365 (Tex. 1987). 
  

The sworn motion establishes a prima facie case that the party lacked timely notice and invokes a trial court’s otherwise-expired jurisdiction for the limited purpose of holding an evidentiary hearing to determine the date on which the party or its counsel first received notice or acquired knowledge of the judgment.  
See Cont'l Cas. Co. v. Davilla
, 139 S.W.3d 374, 379 (Tex. App.—Fort Worth 2004, pet. denied);
 Grondona v. Sutton
, 991 S.W.2d 90, 91–92 (Tex. App.—Austin 1998, pet. denied).  We review the trial court’s findings of the date a party received notice of judgment by the well-known standards of legal and factual sufficiency of the evidence.  
Dishner v. Huitt-Zollars, Inc.
, 162 S.W.3d 370, 378 (Tex. App.—Dallas 2005, no pet.).  As the fact-finder, the trial judge weighs the evidence and judges a witness’s credibility, and the judge may accept or reject any witness’s testimony in whole or in part.  
Id.
    
  

A legal sufficiency challenge may only be sustained when  (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact.  
Uniroyal Goodrich Tire Co. v. Martinez
, 977 S.W.2d 328, 334 (Tex. 1998),
 cert. denied
, 526 U.S. 1040 (1999);
 Robert W. Calvert, 
"No Evidence"
 
and "Insufficient Evidence" Points of Error
, 38 T
EX
. L. R
EV
. 361, 362–63 (1960)
.  In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable fact-finder could, and disregard evidence contrary to the finding unless a reasonable fact-finder could not.
  
City of Keller v. Wilson
, 
168 S.W.3d 802, 827
 (Tex. 2005). 

An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.  
Garza v. Alviar
, 395 S.W.2d 821, 823 (Tex. 1965).  We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding.  
Mar. Overseas Corp. v. Ellis
, 971 S.W.2d 402, 406-07 (Tex.), 
cert. denied
, 525 U.S. 1017 (1998).

B. Application 

Here, Watson’s attorney offered proof, in his affidavit attached to Watson’s verified motion, that he first received notice of the judgment on December 12, 2005.  An affidavit is simply a “statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office.”  
Tex. Gov’t Code Ann.
 § 312.011(1) (Vernon 2005).  Watson’s attorney swore that he did not acquire actual knowledge of the judgment nor receive any oral or written notice of judgment before December 12.  
EMC and Highlands contend that paragraph three of the affidavit, as it relates to Watson’s lack of notice and knowledge, is hearsay and, as such, constitutes incompetent evidence that should not have been considered and relied on by the trial court.  We disagree.  

Paragraph three of the affidavit says, “Neither defendant nor I received timely notice of the judgment and had no actual notice of the judgment or notice from the clerk until December 12, 2005.”  
The affidavit also indicates that the information conveyed by Watson’s attorney was “true and correct based upon [his] personal knowledge.”  
The only other evidence presented
 
to the trial court was an e-mail sent by Watson’s attorney to the other attorneys in the case asking when they had received notice.  Watson’s attorney indicated in the e-mail that he had not received notice until December 12.  The attorney for Furgo South (“Furgo”), as codefendant, responded that she had received notice on November 21, 2005.  EMC and Highlands claim this is the only direct and competent evidence verifying any notice date to any party.    

The attorney-client relationship is an agency relationship.  The attorney’s acts and omissions within the scope of his or her employment are regarded as the client’s acts.  
Gavenda v. Strata Energy, Inc.
, 705 S.W.2d 690, 693 (Tex. 1986).  Thus, the general rule pronounced by the Texas Supreme Court over one hundred and fifty years ago remains good law:  “[T]he general maxim [is] that whatever a man 
sui juris 
may do of himself, he may do by another.”  
Parker v. Poole
, 12 Tex. 86, 87 (1854) (holding that attorney could confess judgment for client before justice of the peace).  

Watson was required to prove “the date that such party [Watson] 
or
 [its] attorney [first either] received such notice [of the judgment] or acquired actual knowledge of the signing.”  
Tex. R. Civ. P.
 306a(5) (emphasis supplied).  Watson’s attorney, acting as Watson’s agent and thus on behalf of Watson, submitted an affidavit in support of the verified motion to extend the postjudgment deadlines.  Furthermore, due to the very agency nature of the attorney-client relationship, we impute Watson’s attorney’s lack of knowledge of the judgment to Watson itself, unless Watson separately received notice, and there is no eveidence in the record that it did.  

Thus, based upon the above evidence and standards of review, we hold that there is legally and factually sufficient evidence that Watson met the burdens of rule 306a(4), (5) and that neither Watson nor its counsel received notice or actual knowledge of the judgment before December 12, 2005.  Accordingly, the trial court properly  granted Watson’s verified motion to extend the postjudgment deadlines.  

We overrule EMC’s and Highlands’s sole counter-point.    

IV.  Attorney’s Fees

In a single issue, Watson asserts error by the trial court in denying Watson’s request for attorney’s fees and costs based on the Lot Purchase Agreement.  EMC and Highlands respond that the trial court correctly denied the request because (a) neither EMC nor Highlands was a party to the Agreement, (b) EMC and Highlands were subrogated to the rights of Sovereign but not its liabilities, (c) Watson did not recover damages, which is a prerequisite for attorney’s fees, and (d) Watson presented no evidence of expert fees as costs.  Watson’s single issue appears to be a matter of first impression.

A.  Standard of Review

The determination of whether attorney’s fees are available in a particular case is a question of law, which is reviewed by this court under the de novo standard.  
See Holland v. Wal-Mart Stores
, 1 S.W.3d 91, 94 (Tex. 1999).  If a right to attorney’s fees exists as a matter of law, then the review of attorney’s fees is under an abuse of discretion standard, as is the allocation of costs.  
See
 
Shaikh v. Aerovias De Mexico
, 127 S.W.3d 76, 82 (Tex. App.—Houston [1st Dist.] 2003, no pet.); 
Z.A.O., Inc. v. Yarbrough Drive Ctr. Joint Venture
, 50 S.W.3d 531, 550 (Tex. App.—El Paso 2001, no pet.).

B. Parties to the Contract

EMC and Highlands first argue that the trial court was correct in its ruling denying Watson’s attorney’s fees because they were not parties to the contract and therefore cannot be bound to the liabilities of the contract, citing 
Neal v. SMC Corp
., 99 S.W.3d 813, 815 (Tex. App.—Dallas 2003, no pet.), which in turn cites 
Boy Scouts of Am. v. Responsive Terminal Sys., Inc
., 790 S.W.2d 738, 747 (Tex. App.—Dallas 1990, writ denied).  While these cases are correctly cited, they do not involve the issue of subrogation rights and thus are not instructive on the issue before this court.  Therefore, we reject this argument.  Instead we address the subrogation argument below.  

C.  Damages

EMC and Highlands next argue that Watson is not entitled to recover attorney’s fees because it was not awarded damages, citing 
Holland
, 1 S.W.3d at 95 and 
Miller v. Kennedy & Minshew, Professional Corp
., 142 S.W.3d 325, 350 (Tex. App.—Fort Worth 2003, pet. denied).  Again, these cases are not instructive because they do not involve subrogation rights nor do they concern contracts wherein the prevailing party, which as a defendant may not recover damages, was contractually entitled to attorney’s fees.  Thus, we also reject this argument as irrelevant.

D.  Subrogation as to Rights, Not Liabilities

EMC and Highlands next argue that in this subrogation case, they are entitled to the rights held by Sovereign, but not subject to any liabilities, even when suing under the terms of a contract.  EMC and Highlands, as subrogees, acknowledge that they step into the shoes of Sovereign Homes.  
See Interstate Fire Ins. Co. v. First Tape, Inc
., 817 S.W.2d 142, 146 (Tex. App.—Houston [1st Dist.] 1991, writ denied).  They further cite cases indicating that an insurer is subrogated to its rights of the insureds, including contractual rights.  None of these cases, however, involve contracts that have potential liabilities in the event the suit is not successful.  No such Texas cases have been cited by either party to this court.  

It is the position of EMC and Highlands that even though they sued Watson under the terms of a contract wherein Watson would recover its attorney’s fees should it prevail, even though EMC and Highlands sued in the name of their subrogor, and even though they acknowledge that they stand in the shoes of Sovereign, Watson is not entitled to its attorney’s fees because subrogation extends only to rights and not to liabilities.  We disagree.  This court has held the following:

Subrogation is the principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy.  
Black’s Law Dictionary 
1467 (8th ed. 2004).  Application of the doctrine is said to be “the purest of equities,” and Texas courts are particularly hospitable to it.  
Interfirst Bank Dallas, N.A. v. U.S. Fid
[
.
]
 & Guar. Co.
, 774 S.W.2d 391, 397 (Tex. App.—Dallas 1989, writ denied).  Equitable subrogation is not dependent upon contract, but arises by operation of law or by implication in equity to prevent injustice.  
Id
.

Harris v. Am. Protection Ins. Co.
, 158 S.W.3d 614, 622 (Tex. App.—Fort Worth 2005, no pet.).  Here, however a contract is involved and is determitive of the rights and potential liabilities of the parties.  As a matter of public policy, we hold that when an insurer sues in subrogation under a contract, it is entitled to all of the rights of its subrogee and likewise exposed to all of its liabilities.

We now quote at length from a California case, citing by analogy a Texas case.  The case involved a property insurer of apartment lessees, Allstate, which, after the insureds were paid their claims for loss of personal property in an apartment fire, brought a subrogation action against the lessor, Loo.

An insurer/subrogee paying for a loss has the right to pursue its insured's rights and remedies against the third party causing the loss.  (
Continental Cas. Co. v. Phoenix Constr. Co. 
(1956) 46 Cal.2d 423, 429, 296 P.2d 801; 
Fireman's Fund Ins. Co. v. Maryland Casualty Co. 
(1994) 21 Cal.App.4th 1586, 1595-1596, 26 Cal.Rptr.2d 762.)  In the action for subrogation the insurer as subrogee stands in the shoes of the insured/subrogor.  (
Suburban Motors, Inc. v. State Farm Mut. Auto. Ins. Co. 
(1990) 218 Cal.App.3d 1354, 1357, 268 Cal.Rptr. 16.)  When standing in the insured's shoes as the analogy indicates, the insurer has no greater rights than the insured would have, and for that reason is subject to the same defenses assertable against the insured/subrogor. (E.g.,
 Liberty Mut. Ins. Co. v. Fales 
(1973) 8 Cal.3d 712, 717, 106 Cal.Rptr. 21, 505 P.2d 213; 
Fireman's Fund Ins. Co. v. Maryland Casualty Co.
, 
supra
, 21 Cal.App.4th at p. 1596, 26 Cal.Rptr.2d 762; 
Bright v. American Termite Control Co. 
(1990) 220 Cal.App.3d 1464, 1469, 269 Cal.Rptr. 793.)

An excellent example of this principle in action in the context of contractual attorney fees is 
Rushing v. Intern. Aviation Underwriters 
(Tex. Civ. App. 1980) 604 S.W.2d 239.  There defendant leased an aircraft from Hi-Performance Aviation which he damaged upon landing.  The insurer of the aircraft, International Aviation Underwriters, paid for the cost of repairs under its policy with Hi-Performance Aviation, then brought an action in subrogation against the defendant-lessee to recover its loss.  The trial court entered judgment for the insurer/subrogee on its negligence claim, but refused to award attorney fees.  (At pp. 240-241.)

The basis of the insurer/subrogee's claim for attorney fees was a provision in the lease agreement between Hi-Performance and the defendant-lessee which gave the prevailing party the right to recover reasonable attorney fees in a suit arising out of the rental agreement or out of the use of the aircraft.  (
Rushing v. Intern. Aviation Underwriters
, supra, 604 S.W.2d at p. 243.)  The insurer argued that subrogation entitled it to all the rights held by the insured under the lease, including the contractual right as prevailing party to recover its attorney fees, and the Texas Court of Appeal agreed: “Under the general rule, an insurer bringing suit in a subrogation action receives pro tanto the rights of its insured to the extent of payments made under the insurance contract.  [Citations.]  The question before us is whether [the insurance company], suing on a subrogation theory, succeeds to the contractual right of its insured to recover attorney's fees.  The insured expended none and thus, none were paid to the insured under the insurance contract.  Rather, the attorney's fees were directly incurred by the [insurance company].  We hold that the insurer may recover attorney's fees in a subrogation action where the insured would have been entitled to attorney's fees if it had prosecuted the suit.”  (At pp. 243
–
244.)

Thus, under 
Rushing
, had Allstate prevailed against Loo, it would have succeeded to the rights of the insured/subrogor to recover a reasonable attorney fee.  We have been offered no reason in law or logic why the converse should not also be true.  Loo's obligation to defend against the action was the same irrespective of the identity of the plaintiff: the lessee or the lessee's subrogee.  We therefore hold that Loo, as prevailing party, is entitled to assert his contractual right to recover reasonable attorney fees in the subrogation action.

Allstate argues that the rule we announce today is bad social policy: “To allow counterclaims against the subrogated insurer means that the insurer's risk depends on factors that are unrelated to the risks for which it earned premiums.”  As we have explained in Part A, 
ante
, recovery of attorney fees is not accomplished by counterclaim: it is an item of costs which has been agreed to by contract.  (Code Civ. Proc., § 1033.5, subd. (a)(1).)  Nor does our ruling increase any risk to insurers. In this case the risk the insurer undertook to insure against was the risk of fire damage to personal property of its insureds.  The insurer lost that risk and paid its policyholders. Nothing in our decision increases or decreases that risk. After making payment the insurer had a decision to make: whether to sue the owner of the building in which the fire occurred. The insurer decided to do that but lost. We assume that the decision to so litigate was intelligently made after weighing the risks that all those who instigate litigation face. That list includes the risk of not prevailing which includes the risk of bearing all of the cost of the litigation-especially in a case in which there is a contract providing for the payment of the prevailing party's attorney fees.

Finally, Allstate also urges our holding will discourage insurance companies from pursuing their subrogation rights.  We doubt it.  But what we do not doubt is this: the presence of an attorney fees provision in a contract discourages-and is intended to discourage-the filing of lawsuits between the parties premised on weak legal positions.  If the risk of being liable to pay attorney fees to the opposing side discourages a subrogee from pursuing a weak subrogation claim, then a valid social policy has been advanced by our holding today.

Allstate Ins. Co. v. Loo
, 46 Cal. App. 4th 1794, 1799–1801 (Cal. Ct. App. 1996).

We hold that Watson is entitled to the $583,000 in attorney’s fees stipulated to by the parties.  Accordingly, we sustain Watson’s sole issue in part.

V.  Expert Costs

Watson also asserts that it is entitled to its expert costs because those expenses are also encompassed in the language of paragraph 20.H. of the Lot Purchase Agreement which calls for payment by the nonprevailing party of “all reasonable costs, charges and expenses, including attorney’s fees.”  We do not reach the question of whether expert costs are encompassed by this language because there is no evidence of any such costs in the record, other than a request in Watson’s motion for judgment of the amount of these costs, let alone proof of their necessity and reasonableness.  Watson’s request in this regard was thus properly denied by the trial court.  We overrule this portion of Watson’s issue.  

VI.  Conclusion

We overrule EMC’s and Highlands’s sole counter-point.  Watson’s single issue is sustained in part and overruled in part.  We reverse that portion of the trial court’s judgment denying Watson’s request for attorney’s fees and remand to the trial court for the apportionment of the $583,000 in attorney’s fees as between EMC and Highlands.  The remainder of the trial court’s judgment is affirmed.  

BOB MCCOY

JUSTICE

PANEL B: LIVINGSTON, GARDNER, and MCCOY, JJ.

DELIVERED: February 1, 2007

FOOTNOTES
1:
Subrogation is the right of one who has paid an obligation which another should have paid to be indemnified by the other.  
Employers Cas. Co. v. Dyess
, 957 S.W.2d 884, 886 (Tex. App.—Amarillo 1997, pet. denied).  

2:
Thirty days after receipt of actual notice of the trial court’s judgment.  
See
 
Tex. R. Civ. P.
 306a(4).