

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-25-00068-CV

---

JOSEPH LAROCQUE, APPELLANT

V.

FLAGCO, LLC D/B/A GRIDIRON FOOTBALL, APPELLEE

---

On Appeal from the 96th District Court
Tarrant County, Texas[1]
Trial Court No. 096-350891-24, Honorable J. Patrick Gallagher, Presiding

---

December 18, 2025

MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

In three issues, Appellant, Joseph LaRocque, challenges the trial court's no-answer default judgment awarding damages, attorney's fees, and injunctive relief to Appellee, Flagco, LLC d/b/a Gridiron Football. We hold the evidence is legally insufficient to support the lost-profits award; that by failing to answer, LaRocque waived any

---

[1] This cause was originally filed in the Second Court of Appeals and was transferred to this Court by a docket-equalization order of the Supreme Court of Texas. *See* TEX. GOV'T CODE § 73.001. In the event of any conflict, we apply the transferor court's case law. TEX. R. APP. P. 41.3.

statutory-preemption challenge to the injunction and fee award and any challenge to the contract's remedial terms; and that the current fee award cannot stand because there is no prevailing party until damages are properly determined. We therefore reverse the awards of damages and attorney's fees and remand those issues for further proceedings.

## BACKGROUND

LaRocque founded a company that owned two youth flex football leagues[2] and manufactured football equipment. He sold the company to Gridiron through an Asset Purchase Agreement that, in relevant part, prohibited him from competing or soliciting employees until October 26, 2025.

Gridiron alleged LaRocque breached his promise not to compete. According to a lawsuit petition, LaRocque owned and operated a competing league called Phenom FTBL, LLC in Gridiron's territories; hired away at least one Gridiron employee; and encouraged at least one operator to leave.

Gridiron sued LaRocque for breach of contract, seeking damages, attorney's fees, and injunctive relief. LaRocque was served with the petition and a temporary restraining order but did not answer. He also failed to appear at a hearing on a temporary injunction.

Almost seven months after service, Gridiron moved for a no answer default judgment. It attached a declaration of Scott Dillon, its CEO, to prove unliquidated damages, as well as an attorney fee affidavit. Gridiron asked the court to award damages

---

[2] Flex football is a limited-contact version of American football.

2

and fees and to sign an injunction tolling the APA's restrictive-covenant period for the period of time LaRocque was in breach.

Dillon's declaration asserted that LaRocque's league diverted participants from Gridiron and caused lost profits. Without submitting any supporting data, Dillon stated a "conservative" projected league growth from 2023 to 2024 of 10%. He compared that projection to actual revenues, claiming: (1) Arizona market revenues declined by 37%, resulting in $276,799.50 in "estimated lost profits;" (2) California revenues declined 1% resulting in $44,826.40 "estimated lost profits;" and (3) Texas revenues grew, but only by 8% resulting in $3,355.20 in "estimated lost profits." Gridiron submitted no evidence of expenses during this period.

The trial court signed a default judgment awarding Gridiron $324,981.10 in damages and $80,552.53 in attorney's fees and conditional appellate fees. The court also signed an injunction extending the restrictive covenants to October 26, 2026, prohibiting LaRocque from competing, soliciting, employing Gridiron personnel, and using Gridiron's confidential information. LaRocque moved to set aside the judgment and for new trial, which was denied.

## ANALYSIS

LaRocque raises three challenges on appeal:

1. The legal sufficiency of the evidence supporting the lost-profits award;

2. The propriety of the permanent injunction extending the restrictive covenants by one year; and

3. The propriety of the attorney's fees award.

3

We review the legal sufficiency of the evidence supporting damages awarded after a no-answer default judgment under the usual legal-sufficiency standard, viewing the evidence in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992). Evidence is legally insufficient if it is conclusory, speculative, or no more than a scintilla. *Id.* at 84–85.

We review the grant and scope of a permanent injunction for an abuse of discretion. *Huynh v. Blanchard*, 694 S.W.3d 648, 673, 690 (Tex. 2024). A trial court abuses its discretion if it misapplies the law to the established facts or acts without reference to guiding rules and principles. *Id.; Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985).

We review entitlement to attorney's fees under a contract de novo and the amount awarded for abuse of discretion, subject to the limits of the parties' agreement and any applicable statutes. *Nathan A. Watson Co. v. Employers Mut. Cas. Co.,* 218 S.W.3d 797, 802 (Tex. App.—Fort Worth 2007, no pet.).

## A. Evidence of Lost Profits

In his first issue, Appellant argues there is no evidence to support the award of $324,981.10 in lost profits. We agree.

Upon a no-answer default, the defendant is deemed to admit the petition's properly pleaded factual allegations and liability, but the plaintiff must still present evidence to establish unliquidated damages. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 86

4

(Tex. 1992); *see also* TEX. R. CIV. P. 243. Unliquidated damages can come in the form of lost profits. *Lucas v. Clark*, 347 S.W.3d 800, 803 (Tex. App.—Austin June 15, 2011, pet. denied). "Lost profits are damages for the loss of net income to a business measured by reasonable certainty." *Miga v. Jensen*, 96 S.W.3d 207, 213 (Tex. 2002). In turn, net income is determined by calculating the excess of all revenues and gains for a period over all expenses and losses of the period. *Kellmann v. Workstation Integrations, Inc.*, 332 S.W.3d 679, 684 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *INOVA Diagnostics, Inc. v. Strayhorn*, 166 S.W.3d 394, 401, n.6–7 (Tex. App.—Austin 2005, pet. denied). It is different from revenues:

> We note that the concept of gross receipts or gross income is quite distinct from net income. Gross income or gross receipts do not take a corporation's expenses into account, while net income is defined as the "excess of all revenues and gains for a period over all expenses and losses of the period." BLACK'S LAW DICTIONARY 1040 (6th ed.1990). Thus, a corporation may have considerable gross receipts or gross income, yet have no net income.

*IINOVA Diags.*, 166 S.W.3d at 401 n.6. "Calculation of lost-profits damages must be based on net profits, not gross revenue or gross profits." *Kellmann*, 332 S.W.3d at 684.

The fact and amount of lost profits must be proven with "reasonable certainty." *Am. Midstream (Alabama Intrastate), LLC v. Rainbow Energy Mktg. Corp.*, 714 S.W.3d 572, 583–84 (Tex. 2025); *Miga v. Jensen*, 96 S.W.3d 207, 213 (Tex. 2002). At a minimum, calculating lost profits "must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained." *Mid Continent Lift & Equip., LLC v. J. McNeill Pilot Car Serv.*, 537 S.W.3d 660, 665 (Tex. App.—Austin 2017, no pet.). A party may not recover lost profits "where there is no evidence from which they may be

5

intelligently estimated."  *Horizon Health Corp. v. Acadia Healthcare Co., Inc.*, 520 S.W.3d 848, 860 (Tex. 2017) (citations omitted).

When proving lost profits due to future business opportunities on account of lost customers, a plaintiff must "adduce evidence establishing that prospective customers would have done business with the plaintiff absent the defendant's misconduct."  *Wylie v. Simmons*, No. 02-19-00241-CV, 2020 Tex. App. LEXIS 10461, at *45 (Tex. App.—Fort Worth Dec. 31, 2020, pet. denied) (*quoting Horizon Health Corp.*, 520 S.W.3d at 861).

With those principles in mind, we turn to the only evidence Gridiron offered: the declaration of its CEO, Scott Dillon.

### 1. Dillon's declaration never proves net lost income

Dillon's declaration asserts that LaRocque's competition caused Gridiron to incur "estimated lost profits" of $324,981.10 across three markets: Arizona, California, and Texas.  He reaches that figure by (1) positing a "conservative projected league growth from 2023 to 2024 of 10%," and (2) comparing that projection to actual revenues in those markets.

However, the declaration identifies no expenses for any of these markets or periods.  It does not describe Gridiron's profit margins, cost structure, or overall profitability.  It simply takes changes in gross revenues (or deviations from a revenue target) and labels the resulting amounts "lost profits."

That methodology fails as a matter of law.  Lost profits are measured by net income, not gross receipts.  *See Univ. Gen. Hosp., LP v. Prexus Health Consultants, LLC*,

6

403 S.W.3d 547, 555 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *INOVA*, 166 S.W.3d at 401 n.6.  Because Dillon never identifies what portion, if any, of the claimed revenue shortfalls would have remained after expenses, his figures do not permit any "intelligent estimate" of lost net income.  *See Horizon Health*, 520 S.W.3d at 860; *Univ. Gen. Hosp., LP*, 403 S.W.3d at 555.  *See also Wiese v. Pro Am Services, Inc.*, 317 S.W.3d 857, 863 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding that evidence of lost gross revenues is insufficient as evidence to prove lost net income)*; South Plains Switching, Ltd. v. BNSF Ry. Co.*, 255 S.W.3d 690, 696 (Tex. App.—Amarillo 2008, pet. denied) (holding that testimony regarding revenues was insufficient to prove lost profits in the absence of evidence concerning expenses).  They show, at most, that revenues did not perform as he had hoped.

2. The 10% "league growth" assumption is undefined and unsupported

Gridiron's response relies heavily on a keystone assumption: that Dillon stated a 10% "conservative projected league growth from 2023 to 2024."  But that declaration never explains:

- what "league growth" measures (Number of leagues? Operators? Teams? Participants? Spectators? Revenue?);

- how that metric relates to Gridiron's net income; or

- what foundational facts support the belief that 10% growth is applicable for the Arizona, California, and Texas markets;

Even if we assume the 10% figure is accurate as a revenue forecast, Dillon never links that percentage to Gridiron's actual past performance in Arizona, California, or Texas, or to any established profit margins in those markets.  He does not show that those territories

7

historically grew revenue at 10%, that comparable leagues did so, or how any operations translated such growth into the profit anticipated. As in *Prexus*, a free-floating percentage derived from unspecified prior experience cannot, without more, serve as the basis for a lost-profits calculation on the particular business allegedly harmed. *Univ. Gen. Hosp., LP v. Prexus Health Consultants, LLC*, 403 S.W.3d 547, 556–57 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). We therefore hold that Dillon's 10% remark is not an "objective fact" but bare *ipse dixit. See Mid Continent*, 537 S.W.3d at 665 (requiring "objective facts, figures, or data").

### 3. No evidence connects LaRocque's conduct to any lost customers or lost profit

Separate from the failure to prove any amount, Dillon's declaration also fails to show any connection to LaRocque's conduct. We take as true the statement that Phenom FTBL "diverted participants." But, without more, the fact that a reduction in revenue followed a defendant's misconduct is insufficient to prove the reduction was caused by the defendant. *See Hancock v. Variyam*, 400 S.W.3d 59, 70–71 (Tex. 2013) (applying equal-inference rule to find insufficient evidence of damages because factfinder may not reasonably infer an ultimate fact from "meager circumstantial evidence which could give rise to any number of inferences, none more probable than another" (quoting *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 392 (Tex. 1997))); *Prexus Health Consultants, LLC*, 403 S.W.3d at 556–57 (holding anticipated 32% profit margin derived from prior-year financials for a different prospective hospital project could not support lost profits on the contracts at issue when the margin was not linked to those contracts or the plaintiff's past performance on them).

As part of its damages proof, Gridiron offers no evidence identifying any league, team, operator, or participant who left Gridiron for Phenom, quantifying how many participants supposedly defected, showing that any Phenom participants were previously Gridiron's customers, or otherwise demonstrating that, absent LaRocque's conduct, the decisions of any such team, operator, or participant would have affected Gridiron's net income. Texas law requires more: recovery of lost profits must be predicated on one complete calculation, supported by objective facts, figures, or data, not a series of partial assumptions about lost business. *See Heine*, 835 S.W.2d at 84–85 ("Recovery of lost profits must be predicated on one complete calculation."); *Barton v. Resort Dev. Latin Am., Inc.*, 413 S.W.3d 232, 238 (Tex. App.—Dallas 2013, pet. denied) (holding evidence of damages of lost business to be insufficient because "we would be required to stack assumption upon assumption, which we will not do.").

Because Gridiron's evidence of lost profits is legally insufficient, we sustain LaRocque's first issue. We therefore remand the cause to the trial court for a new trial on Gridiron's claim of unliquidated damages. *Heine*, 835 S.W.2d at 86 ("[W]hen an appellate court sustains a no evidence point after an uncontested hearing on unliquidated damages following a no-answer default judgment, the appropriate disposition is a remand for a new trial on the issue of unliquidated damages.").

B. Extension of Injunction

In his second issue, LaRocque challenges the permanent injunction extending his non-compete obligations by one year. Specifically, the APA contains two key provisions. First, it tolls the restrictive covenants during any breach:

9

> The time period during which the covenants contained in this Section 5.01 shall apply shall be tolled and suspended for a period equal to the aggregate time during which any Seller Party . . . violate[s] such covenants.

Second, it authorizes cumulative remedies:

> The Seller Parties specifically recognize that any breach . . . will cause irreparable injury to Buyer and that actual damages may be difficult to ascertain and, in any event, may be inadequate. Accordingly . . . Buyer will be entitled to injunctive relief in addition to such other legal and equitable remedies that may be available.

LaRocque agreed to these terms. On appeal, he raises three arguments: the Covenants Not to Compete Act preempts such relief, damages provide an adequate remedy at law, and the extension constitutes double recovery. For the reasons stated below, we disagree with LaRocque.

### 1. LaRocque waived affirmative defenses

LaRocque first contends Texas Business & Commerce Code §§ 15.50–15.52 preempt such an injunction. But preemption pertaining to the availability of applicable law (when jurisdiction is proper) operates as an affirmative defense. *Int. of E.A.C.*, No. 07-21-00145-CV, 2021 Tex. App. LEXIS 9306, at *3 (Tex. App.—Amarillo Nov. 16, 2021, pet. denied) (citing *Toyota Motor Sales, U.S.A., Inc. v. Reavis*, 627 S.W.3d 713, 727–28 (Tex. App.—Dallas 2021, pet. granted, judgm't vacated w.r.m.)).

LaRocque was required to assert an affirmative defense of preemption to preserve it. *See* TEX. R. CIV. P 94. He never pleaded preemption because he never filed an answer. Accordingly, his preemption defense was forfeited.

10

## 2. LaRocque contracted for cumulative remedies

LaRocque alternatively argues Gridiron cannot simultaneously obtain damages and an injunction. But as noted above, LaRocque agreed to these terms in the APA. The contract explicitly provides for injunctive relief "in addition to" other remedies, language that contemplates cumulative, not alternative, relief. LaRocque offers no compelling reason why he should not be bound by terms he freely negotiated and signed.

Texas public policy favors freedom of contract. *Atmos Energy Corp. v. Paul*, 598 S.W.3d 431, 445 (Tex. App.—Fort Worth 2020, no pet.). We enforce contracts as written. *In re Whataburger Rests. LLC*, 645 S.W.3d 188, 194–95 (Tex. 2022) (orig. proceeding). Unless there is a compelling reason, "we must respect and enforce the terms of a contract that the parties have freely and voluntarily entered." *Paul*, 598 S.W.3d at 445.

The contract here reflects a common structure in non-compete agreements. The tolling provision ensures the buyer receives the full benefit of the restrictive period it bargained for, preventing a breaching seller from running out the clock through violations. The injunctive-relief provision recognizes that monetary damages may not adequately compensate for ongoing competitive harm. Together, these provisions protect Gridiron's legitimate business interests, the same interests LaRocque acknowledged when he accepted valuable consideration for his company.

We overrule LaRocque's second issue.

11

## C. Attorney's Fees

In his third issue, LaRocque argues the attorney's fees award violates the Covenants Not to Compete Act. However, it is unnecessary to address this issue in light of the remand of this cause to consider Gridiron's claim for damages.

The APA entitles the prevailing party to recover reasonable attorney's fees. Gridiron obtained a default judgment and was deemed the prevailing party. But as held above, we have reversed the damages award; this was Gridiron's sole measure of recovery on its breach claim. A party recovering zero damages loses prevailing-party status. *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 655–56 (Tex. 2009).

The remand creates uncertainty. On retrial, Gridiron might prove damages and prevail. It might recover nothing and lose. Or the trial court might award nominal damages, raising questions about whether either party truly prevailed. Until we know who prevails and on what basis, it is unnecessary to determine whether the Covenants Not to Compete Act limits the fee award.

Rather than issue an advisory opinion on hypothetical fee awards, we reverse the current attorney fee award and remand for reconsideration after the damages retrial. This permits the trial court to determine the prevailing party and, if necessary, address any statutory limitations on fee recovery based on the actual outcome.

## CONCLUSION

We reverse the default judgment on the award of damages and attorney's fees and remand the cause to the trial court for further proceedings.


Lawrence M. Doss
Justice