Michael D. JAMISON and Dianne
D. Jamison, Appellants

v.

Dale B. ALLEN and Mary
Kay Allen, Appellees.

No. 05–11–00603–CV.

Court of Appeals of Texas,
Dallas.

Aug. 8, 2012.

Joe E. Weis, Pemberton, Green, Newcomb and Weis, Greenville, TX, for Appellant.

Jack L. Paris, Jr., Greenville, TX, for Appellee.

Before Justices MOSELEY, LANG–MIERS, and MURPHY.

## OPINION

Opinion By Justice LANG–MIERS.

This is an appeal from a judgment rendered after a trial to the court. Appellees Dale B. Allen and Mary Kay Allen sued their neighbors, appellants Michael D. Jamison and Dianne D. Jamison, alleging that the Jamisons violated their neighborhood's Declaration of Covenants, Conditions and Restrictions by using an unapproved building material when they built their home. The Allens sought a declaratory judgment that the Declaration is valid and also sought to enforce the building restriction against the Jamisons. The trial court found in favor of the Allens, and the Jamisons filed this appeal. We reverse the trial court's judgment and render judgment that appellees take nothing.

### BACKGROUND

The Jamisons and the Allens live in a subdivision known as Cedar Oaks Phase Two, located in Hunt County, Texas. The subdivision is subject to a Declaration of Covenants, Conditions and Restrictions and provides that the "exterior walls" of the homes must be covered only in certain approved building materials. The Jamisons selected a material known as "HardiPlank"[1] for the siding on their home. HardiPlank was described as a fiber cement product that is difficult to distinguish

---

1. The siding is manufactured by James Hardie. The briefing also contains the spelling, "Hardie Plank."

from wood; is fire resistant, rot resistant, and insect resistant; does not shrink, swell or absorb moisture; and has a fire rating that is equal to brick veneer.

Dale Allen saw workers installing HardiPlank on the left front side of the Jamisons' home. He told the construction supervisor that the material was not an approved material. The next day, Mr. Allen talked to the builder about the use of HardiPlank on the Jamisons' home and, a few days later, he talked to Dianne Jamison about it. Mrs. Jamison told Mr. Allen that he had also used HardiPlank on a portion of his home—the gables. When the Jamisons continued to construct their home using HardiPlank, the Allens sued them to enforce the building restriction. The Jamisons answered, asserting, among other things, the affirmative defense of quasi-estoppel.

The parties tried the case to the court. The Allens testified, along with three of their neighbors, and they also called Mrs. Jamison as an adverse witness. The Jamisons presented testimony from the builder, the developer, a real estate appraiser/broker, and three different neighbors. At the conclusion of the trial, the court ruled in favor of the Allens. The court issued a final judgment ordering the Jamisons to bring their home into compliance with the Declaration and awarding the Allens costs plus $4,578 in attorney's fees. The trial court made findings of fact and conclusions of law.

The dispute on appeal involves the interpretation of "exterior walls" contained in the building restriction:

> The exterior walls of any dwelling in the Addition must be composed entirely of some combination of: brick veneer; stone; commercially cut, milled and finished logs; redwood or cedar siding twelve inches or less in width of tongue in groove and lapped variety; or glass.

When wood, or similar product that normally requires painting, is used on eaves, doors, trim, etc[.], painting must be properly applied, and when redwood or cedar are used on the exterior, such surfaces shall be painted, stained or preserved and may not remain unfinished wood. . . .

It appears undisputed that HardiPlank is not an approved building material for the exterior walls. The Jamisons contended at trial, however, that the Allens were estopped from complaining about the Jamisons' use of HardiPlank because the Allens also used HardiPlank on their gables. In response, the Allens contended that gables are not "exterior walls," that they did not violate the building restriction, and that they should not be estopped from suing the Jamisons. In ruling in the Allens' favor, the trial court defined "exterior walls" to mean:

> [T]he vertical structure on the outside of the home extending from the foundation to the plate line, being the top of the wall framing where the ceiling joist and roof sit.

The court also found that the "exterior walls" of the Allens' home "are completely covered in specified approved materials for exterior walls" and that there was no evidence to support the Jamisons' defense of quasi-estoppel. In two issues, the Jamisons challenge the trial court's findings and conclusions.

### INTERPRETATION OF "EXTERIOR WALLS"

In issue one, the Jamisons contend that the trial court erred when it defined "exterior walls" to impliedly exclude gables.

#### Standard of Review

We review a trial court's interpretation of a restrictive covenant de novo.

See *Rakowski v. Comm. to Protect Clear Creek Village Homeowners' Rights,* 252 S.W.3d 673, 676 (Tex.App.-Houston [14th Dist.] 2008, pet. denied); *Air Park–Dallas Zoning Comm. v. Crow Billingsley Air-park, Ltd.,* 109 S.W.3d 900, 909 (Tex.App.-Dallas 2003, no pet.). Restrictive covenants are subject to the general rules of contract construction. *Pilarcik v. Emmons,* 966 S.W.2d 474, 478 (Tex.1998). When construing an undefined term in a restrictive covenant, we determine the parties' intent by giving the term its plain, everyday meaning unless the contract shows the parties used the term in a technical or different sense. *See Heritage Res., Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex.1996); *Bradford Partners II, L.P. v. Fahning,* 231 S.W.3d 513, 520 (Tex. App.-Dallas 2007, no pet.).

### Analysis

The trial court concluded that the building restriction was "clear and unambiguous" and the parties do not contend otherwise. The Jamisons contend that the term "exterior walls" in the building restriction should be defined to include gables. The Allens contend the term should exclude gables. They argue that the Jamisons' definition of "exterior walls" would mean that "virtually any portion of a house that is perpendicular to the ground constitutes an exterior wall." They contend that under the Jamisons' definition, the reference to "eaves, doors, trim, etc." in the building restriction would be rendered meaningless. We agree with the Jamisons.

"Wall" is defined as "a vertical architectural member used to define and divide space ... one of the sides of a room or building that connects the floor and ceiling or foundation and roof." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2572 (1981). It is also defined as "a side of a building or room, typically forming part of the building's structure." THE NEW OXFORD AMERICAN DICTIONARY 1898 (2001). "Gable" is defined as "the vertical triangular portion of the end of a building from the level of the cornice or eaves to the ridge of the roof," and "the end wall of a building as distinguished from the front or rear side." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 927. It is also defined as "the part of a wall that encloses the end of a pitched roof[;] (also gable end) a wall topped with a gable[;] a gable-shaped canopy over a window or door." THE NEW OXFORD AMERICAN DICTIONARY 692.

Under the trial court's definition, the areas on the outside walls from the plate line (defined as "the top of the wall framing where the ceiling joist and roof sit") up to the roof are not "exterior walls." But the everyday definition of "wall" includes the area that "connects the foundation and the roof." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2572. This definition by necessity includes the area above the plate line up to the roof, in other words, the gable end on a pitched roof. The everyday definition of "wall" also includes the sides of a building "typically forming part of the building's structure." Based on the record in this case, the gables involved here are part of the structure of the parties' homes—the gables support the roof of both homes and also the entryway of the Allens' home.

The Allens respond that the term "exterior walls" was intended by the parties to be used in an architectural sense and that "[n]o less than twelve specific paragraphs of the Declaration ... deal with construction or architectural matters." They argue that we should construe "exterior walls" in the context of those other "architectural matters" but they globally refer us to three single-spaced pages of the Declaration without arguing how any provision on those pages supports their argument.

Nevertheless, we have reviewed the Declaration and do not find support for this argument.

We conclude that the trial court erred by defining "exterior walls" to be "the vertical structure on the outside of the home extending from the foundation to the plate line...." We conclude that the term "exterior walls," in its everyday sense, includes gables. We resolve issue one in appellants' favor.

### DOCTRINE OF QUASI-ESTOPPEL

■ In issue two, the Jamisons contend that the trial court erred by finding that the Allens' home was "completely covered" in an approved material and by failing to apply the doctrine of quasi-estoppel to the Allens' claims. We agree.

The Jamisons argue that the evidence is legally and factually insufficient to support the trial court's finding that

the exterior walls of the dwelling of Plaintiffs, Dale B. Allen and Mary Kay Allen, are completely covered in specified approved materials for exterior walls as provided in the Declaration of Covenants, Conditions and Restrictions.

They also contend that the evidence is legally insufficient to support the trial court's conclusion that "there is no evidence to support [their] asserted defense of quasi-estoppel."

### Standard of Review

■ Findings of fact made after a bench trial have the same force and effect as jury findings. *Kahn v. Imperial Airport, L.P.*, 308 S.W.3d 432, 436–37 (Tex. App.-Dallas 2010, no pet.). The applicable standard of review is the same as that applied in the review of jury findings. *Id.* The test for legal sufficiency is whether the evidence would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005); *Kahn,* 308 S.W.3d at 437. In our review, we credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *City of Keller,* 168 S.W.3d at 827; *Kahn,* 308 S.W.3d at 437. In reviewing a finding for factual sufficiency, we will set aside the finding only if the evidence supporting the finding is so weak or is so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Kahn,* 308 S.W.3d at 437.

### Analysis

■ The Jamisons bore the burden to establish their affirmative defense of quasi-estoppel. *See Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.,* 349 S.W.3d 258, 268 (Tex.App.-Dallas 2011, pet. denied). "Quasi-estoppel ... is a term applied to certain legal bars, such as ratification, election, acquiescence, or acceptance of benefits." *Id.* [I]t precludes a person from asserting, to another's disadvantage, a right inconsistent with a position previously taken." *Id.* It will apply when a person knowingly acts or conducts himself in a particular manner and then takes a position inconsistent with that act or conduct. *Id.* (citing *Schauer v. Von Schauer,* 138 S.W. 145, 149–50 (Tex.Civ. App.-Austin 1911, writ ref'd)).

The trial court found that the "exterior walls" of the Allens' home were "completely covered in a specified approved material" and ruled against the Jamisons on their quasi-estoppel affirmative defense. Pictures of the Allens' home were offered into evidence. The pictures depict a stone and brick home with multiple roof lines. Five gables are visible on the Allens' home: one over the entryway, one on each end of the

middle portion of the home, and one each on the right and left sides of the home. Mr. Allen testified and admitted that he chose to use HardiPlank on the entryway gable and the gables on each end of the middle portion of his home. But he contended that those gables were not "exterior walls."

Having concluded that the term "exterior walls" includes gables, and because the Allens admitted that they knowingly used HardiPlank on their gables, we further conclude that there is no evidence to support the trial court's finding that the "exterior walls" of the Allens' home were covered in an approved material. We also conclude that there is no evidence to support the trial court's conclusion of law with respect to the Jamisons' affirmative defense of quasi-estoppel. Quasi-estoppel prohibits the Allens from complaining that the Jamisons used an unapproved material on their "exterior walls" when the Allens used the same unapproved material on their gables. *See Forney 921*, 349 S.W.3d at 269–70. We resolve issue two in appellants' favor.

## CONCLUSION

We reverse the trial court's judgment and render judgment that appellees take nothing by way of their lawsuit.