**AFFIRM in Part, and REVERSE and RENDER in Part; Opinion Filed April 8, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00750-CV

### WEAVER AND TIDWELL, L.L.P., Appellant

### V.

### THE GUARANTEE COMPANY OF NORTH AMERICA USA, Appellee

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 09-11140**

## OPINION

Before Justices O'Neill, Lang-Miers, and Evans
Opinion by Justice Lang-Miers

Appellant Weaver and Tidwell, L.L.P. appeals the trial court's judgment awarding appellee, The Guarantee Company of North America USA, approximately $2.6 million for losses that the trial court found Guarantee sustained as a result of Weaver's negligent misrepresentations in audited financial statements. Weaver also appeals the trial court's dismissal of Weaver's counterclaim on summary judgment. We reverse and render in part and affirm in part.

### BACKGROUND

J&V Communication Services, Inc. is a now defunct construction company that worked on projects for the Texas Department of Transportation (TxDOT). TxDOT required J&V to

acquire performance bonds in order to bid on its projects. The appellee, Guarantee, is a bonding company that issued performance bonds for J&V. Guarantee required J&V to provide it with audited financial statements in connection with its issuance of performance bonds. The appellant, Weaver, is an accounting firm that prepared audited financial statements on behalf of J&V for 2005 and 2006. J&V submitted financial statements prepared by Weaver to Guarantee, Guarantee issued performance bonds for J&V, and J&V obtained contracts with TxDOT. When J&V later defaulted on its contracts with TxDOT, Guarantee had to take over and complete some of the TxDOT jobs under its various performance bonds and suffered losses on performance bonds that it issued on behalf of J&V.

In September 2008, J&V sued Weaver, alleging breach of fiduciary duty, fraud, and accounting negligence. Weaver moved to compel arbitration based upon arbitration clauses in engagement letters between Weaver and J&V. The trial court granted Weaver's motion and ordered the parties to arbitration.

Nearly a year later, in August 2009, Guarantee also sued Weaver for accounting negligence. Weaver moved to compel arbitration based on the arbitration clauses in the engagement letters between Weaver and J&V or, alternatively, to abate the Guarantee lawsuit pending the outcome of the arbitration involving Weaver and J&V. The trial court denied Weaver's motion, and Weaver filed an interlocutory appeal in this Court. We affirmed the trial court, concluding that Guarantee did not allege a contractual subrogation claim against Weaver pursuant to the engagement letters and that Guarantee was not a third party beneficiary of the engagement letters. *See Weaver & Tidwell, L.L.P. v. Guar. Co. of N. Am. USA*, No. 05-10-00557-CV, 2011 WL 635261, at *1–3 (Tex. App.—Dallas Feb. 23, 2011, no pet.) (mem. op.).

In the arbitration, J&V was awarded nothing and Weaver was awarded its attorney's fees and other fees and costs against J&V. A trial court confirmed the arbitration award for Weaver

totaling $773,843.82. Weaver then filed its fourth amended counterclaim in this case, in which Weaver sought a declaratory judgment that Guarantee was liable for Weaver's arbitration award against J&V. The trial court granted the motion for summary judgment filed by Guarantee and dismissed Weaver's counterclaim.

After a non-jury trial, the trial court awarded Guarantee approximately $2.6 million against Weaver. In its findings of fact and conclusions of law, the trial court concluded that Weaver's 2005 audit of J&V was "false and/or misleading" and that Guarantee justifiably relied on the 2005 audit in deciding to issue bonds on behalf of J&V. The trial court also concluded that Weaver's "false and/or misleading" representations proximately caused Guarantee's losses. The trial court made the following findings of fact regarding Weaver's affirmative defense that the two-year statute of limitations barred the claim and Guarantee's plea that the discovery rule deferred the accrual of the cause of action:

> 30. The Surety, however, ultimately did not discover that the 2005 Audit was false and/or misleading until long after the fact. In particular, Jameson [an underwriter for Guarantee] offered credible, relevant, and persuasive testimony that he did not learn that the 2005 Audit was false and/or misleading until his deposition occurred on June 29, 2010, in a separate lawsuit. Mike Bowen ("Bowen"), bond claims manager for the Surety, offered credible, relevant, and persuasive testimony that he did not consider a possible suit against Weaver until March 26, 2008. In any event, the Surety's lawsuit was filed against Weaver on August 27, 2009, and Weaver offered no credible, relevant, and persuasive evidence rebutting the discovery by the Surety or establishing that the Surety by exercising reasonable diligence could have discovered that the 2005 Audit was false and/or misleading in [sic] any earlier point in time.

> . . . .

> 50. Weaver failed to bring forward credible, relevant, and persuasive evidence in support of its affirmative defense of statute of limitations. Weaver failed to bring forward credible, relevant, and persuasive evidence rebutting the date of discovery by the Surety that the 2005 Audit was false and/or misleading. Weaver failed to bring forward credible, relevant, and persuasive evidence establishing that the Surety by exercising reasonable diligence could have discovered that the 2005 Audit was false and/or misleading at any earlier point in time.

Based on these findings, the trial court concluded that Weaver had not met its burden of proof to establish its affirmative defense of statute of limitations and that Guarantee had "met its burden in establishing the applicability of the discovery rule to its claim of negligent misrepresentation."

Weaver presents six issues on appeal. We address only two of those issues because we conclude that the remaining issues do not affect the final disposition of this appeal. TEX. R. APP. P. 47.1 (stating court of appeals must address every issue necessary to final disposition of appeal). In Weaver's second issue, it contends that the statute of limitations bars Guarantee's negligent misrepresentation claim. We sustain this issue. In Weaver's fifth issue, it argues that the trial court erred by granting summary judgment dismissing Weaver's counterclaim that Guarantee was liable for the judgment from the arbitration between J&V and Weaver. We overrule this issue. As a result, we reverse and render in part and affirm in part.

## GUARANTEE'S RECOVERY AGAINST WEAVER

In issue two, Weaver argues that the judgment should be reversed because Guarantee's claim is barred by the two-year statute of limitations.

### Standard of Review

Findings of fact made after a non-jury trial have the same force and effect as jury findings. *Holliday v. Weaver*, 410 S.W.3d 439, 442 (Tex. App.—Dallas 2013, pet. filed); *Jamison v. Allen*, 377 S.W.3d 819, 823 (Tex. App.—Dallas 2012, no pet.). We review the court's findings of fact using the same standard of review we apply to the review of jury findings. *Holliday*, 410 S.W.3d at 442; *Jamison*, 377 S.W.3d at 823.

When an appellant attacks the legal sufficiency of an adverse finding on an issue for which it did not have the burden of proof, the appellant must demonstrate there is no evidence to support the adverse finding. *Pulley v. Milberger*, 198 S.W.3d 418, 426 (Tex. App.—Dallas 2006, pet. denied). A legal sufficiency review of a no-evidence point must credit favorable

–4–

evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Jamison*, 377 S.W.3d at 823; *Pulley*, 198 S.W.3d at 426. We will sustain a no-evidence point when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *Marathon Corp. v Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003) (per curiam); *Pulley*, 198 S.W.3d at 426.

When an appellant challenges the factual sufficiency of the evidence to support an adverse finding on which it did not have the burden of proof, the appellant must demonstrate there is insufficient evidence to support the adverse finding. *Pulley*, 198 S.W.3d at 426. In reviewing a finding for factual sufficiency, we consider and weigh all of the evidence in support of and contrary to the trial court's finding and will set aside the finding only if it is so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Jamison*, 377 S.W.3d at 823. In a non-jury trial, the trial court is the sole judge of a witness's demeanor and credibility and the weight of the evidence. *Wright Group Architects-Planners, P.L.L.C. v. Pierce*, 343 S.W.3d 196, 199 (Tex. App.—Dallas 2011, no pet.). We review a trial court's conclusions of law de novo to determine whether the trial court drew the correct legal conclusions from the facts. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Wright*, 343 S.W.3d at 199.

### Statute of Limitations and Discovery Rule—Applicable Law

The statute of limitations for a negligent misrepresentation cause of action is two years. *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998); *Collective Asset Partners, LLC v. McDade*, 400 S.W.3d 213, 217 (Tex. App.—Dallas 2013, no pet.). "As a general rule, a cause

of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex 2003). The discovery rule is "a very limited exception to statutes of limitations" that "defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996). The discovery rule only applies "when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable." *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001); *see also Matthiessen v. Schaefer*, 27 S.W.3d 25, 31 (Tex. App.—San Antonio 2000, pet. denied) (discovery rule applies to negligent misrepresentation claim if injury is inherently undiscoverable and evidence of injury is objectively verifiable).

Weaver bore the initial burden of pleading, proving, and securing findings to establish its affirmative defense of statute of limitations.[1] *See Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988); *Prestige Ford,* 336 S.W.3d at 836; *see also* TEX. R. CIV. P. 94 (statute of limitations is an affirmative defense). Guarantee—as the party seeking to benefit from the discovery rule—bore "the burden of proving and securing favorable findings thereon" or waived the complaint on appeal. *Woods*, 769 S.W.2d at 518; *see Barker v. Eckman*, 213 S.W.3d 306, 312 (Tex. 2006) (stating that party seeking application of discovery rule "has the burden of obtaining findings to support its application" and concluding that, where evidence was not conclusive as to when party should have known facts giving rise to claim, the trial court was

---

[1] Unless the evidence conclusively established the date of accrual, Weaver's burden included establishing when the cause of action accrued. *See Holland v. Lovelace*, 352 S.W.3d 777, 788 (Tex. App.—Dallas 2011, pet. denied) (party seeking application of statute of limitations defense must obtain findings regarding accrual date of claims unless conclusively established); *Prestige Ford Garland Ltd. P'ship v. Morales*, 336 S.W.3d 833, 836 (Tex. App.—Dallas 2011, no pet.); *see Cooper v. Cochran*, 288 S.W.3d 522, 531 (Tex. App.—Dallas 2009, no pet.) (concluding that a "party asserting an affirmative defense [including limitations] in a trial before the court must request findings in support of the defense to avoid waiver" and, if the court's findings do not include any of the elements of the defense, "the party must specifically request additional findings relevant to the defense"). In its request for additional and amended findings of fact and conclusions of law, Weaver requested a finding that Guarantee's cause of action accrued when it issued its first bond in reliance on the 2005 audit in May 2006, so that the statute of limitations expired in May 2008. *See Cooper*, 288 S.W.3d at 531; *Alma Invs., Inc. v. Bahia Mar Co-Owners Ass'n*, 999 S.W.2d 820, 822 (Tex. App.—Corpus Christi 1999, pet. denied). The trial court did not amend the findings of fact and conclusions of law as Weaver requested.

precluded from applying discovery rule absent jury findings of when the party should have known of those facts); *Holland*, 352 S.W.3d at 791; *Owens-Illinois, Inc. v. Chatham*, 899 S.W.2d 722, 737 (Tex. App.—Houston [14th Dist.] 1995, writ dism'd) (concluding parties asserting discovery rule had the burden "to plead and prove when they knew or should have known that they had" diseases that were the basis of their claims).

## Arguments of the Parties

### Weaver's Arguments

Weaver argues that Guarantee's cause of action for negligent misrepresentation based on the 2005 audit accrued on May 4, 2006 because that is the date when Guarantee issued its first bond after it received the 2005 audit. Because Guarantee did not file this lawsuit until August 29, 2009, Weaver contends that the two-year statute of limitations bars Guarantee's negligent misrepresentation claim. Weaver also argues that Guarantee did not satisfy its burden to prove that the discovery rule deferred accrual of the cause of action because "Guarantee offered no evidence of when it knew or should have known of the alleged wrongful act or resulting injury." And Weaver contends that, "[a]ssuming the discovery rule ***could*** apply, Guarantee failed to present sufficient evidence that it ***would*** apply."[2]

Weaver also argues that the trial court's one finding regarding the discovery rule only states when Guarantee first considered filing suit, not when Guarantee knew or should have known of the wrongful act or resulting injury. And Weaver argues that the evidence that the trial court referred to in its finding of fact is irrelevant and does not establish that the discovery rule applied. Weaver contends that the claim accrued "as soon as the defendant's misrepresentation

---

[2] Weaver also contends that (1) the discovery rule does not apply to third-party claims against auditors, (2) the discovery rule does not apply because Guarantee's injury was not inherently undiscoverable and objectively verifiable, (3) the "undisputed evidence" establishes that Guarantee knew or should have known of the problems with J&V's underbillings (which are estimates of future receivables) and that it could suffer injury by relying on the underbillings figures more than two years before Guarantee filed suit, and (4) when the trial court refused to award Guarantee damages for bonds issued after May 2007, the trial court acknowledged that Guarantee knew of the underbillings problems more than two years before filing suit. Because of our disposition of this issue, we do not address these arguments.

induce[d] the plaintiff to act[,]" even if all resulting injuries had not occurred. *See S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996).

### *Guarantee's Arguments*

Guarantee argues that it satisfied its burden of establishing the discovery rule and that the trial court properly applied it. It argues that the statute of limitations did not begin to run when Guarantee issued its first bond after receiving the 2005 audit because that would require it "to know of a misrepresentation at the same time it was acting on this misrepresentation." Guarantee contends that the "only evidence" presented to the court was that Guarantee's underwriters "never had any reason to question Weaver's statements in the 2005 audit at the time it was received[.]" Guarantee contends that the earliest date that Guarantee "knew or should have known" of a problem with Weaver's audits was March 26, 2008, citing (1) a letter dated March 26, 2008 that Bowen, Guarantee's bond claims manager, received from another auditor whom Bowen had retained that discussed possible problems with the 2005 and 2006 audits, (2) Guarantee's chief underwriter's testimony that his first notice that J&V was in financial difficulty was in March 2008 and that there were no performance defaults on J&V contracts prior to March 2008, (3) testimony by Jameson, an underwriter with Guarantee, that he received news that J&V could not make payroll in early 2008, and (4) a Collateral and Disbursement Agreement executed in March 2008 in which J&V and its owners admitted that J&V was financially unable to perform some contracts. Guarantee contends that, until March 2008, it had not suffered any legal injury from the audits and that it timely filed this lawsuit on August 27, 2009 within the two-year statute of limitations.[3]

---

[3] Guarantee also argues that (1) even if Weaver correctly contends that the trial court made "implied findings" that an internal e-mail of Guarantee established that Guarantee discovered its legal injury on August 30, 2007, Guarantee still filed suit within the two-year statute of limitations, (2) routine underwriting discussions do not equate to discovery of a legal injury, and (3) the evidence Weaver cites as providing "an earlier 'knew or should have known' date" does not provide this Court with evidence that mandates reversing and remanding on factual sufficiency grounds.

**Analysis**

It was Weaver's burden to establish when Guarantee's cause of action accrued. *See Woods*, 769 S.W.2d at 517; *Holland*, 352 S.W.3d at 788. If "reasonable minds could not differ about the conclusion to be drawn from the facts in the record," an accrual date is conclusively established. *NETCO, Inc. v. Montemayor*, 352 S.W.3d 733, 738 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *see Holland*, 352 S.W.3d at 791.

As a rule, "a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V.*, 933 S.W.2d at 4; *see Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990) (stating "a cause of action can generally be said to accrue when the wrongful act effects an injury, regardless of when the plaintiff learned of such injury"); *Sabine Towing & Transp. Co. v. Holliday Ins. Agency, Inc.*, 54 S.W.3d 57, 60 (Tex. App.—Texarkana 2001, pet. denied) (applying legal injury standard to negligent misrepresentation claim). Weaver contends that Guarantee's claim for negligent misrepresentation accrued as soon as Weaver's alleged misrepresentation induced Guarantee to act, which was "as soon as Guarantee issued its first bond in alleged reliance on the 2005 audit." But Guarantee argues that its claim accrued later because it did not suffer a legal injury until J&V defaulted on its contracts and Guarantee suffered resulting losses on the performance bonds that it issued for J&V. We agree with Weaver.

"A person suffers legal injury from faulty professional advice when the advice is taken." *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997) (involving accounting malpractice claim). The first bond that Guarantee issued in alleged reliance on Weaver's representations in the 2005 audit was issued on May 4, 2006. As a result, the cause of action accrued on that date

and the two-year statute of limitations for Guarantee's negligent misrepresentation claim based on Weaver's representations in the 2005 audit ran on May 4, 2008.

Although Guarantee argued that the discovery rule applied, it did not obtain findings on when Guarantee knew or should have known of the facts that gave rise to its cause of action. *See Barker*, 213 S.W.3d at 311–12; *Woods*, 769 S.W.2d at 518; *Patel v. Williams*, No. 14-96-01482-CV, 1998 WL 93746, at *2 (Tex. App.—Houston [14th Dist.] Mar. 5, 1998, no pet.) (not designated for publication). Instead, the trial court made a finding that Guarantee "ultimately did not discover that the 2005 Audit was false and/or misleading until long after the fact" based on Jameson's testimony that he did not learn that the 2005 audit was false and/or misleading until he gave his deposition in a separate lawsuit and Bowen's testimony that he did not consider filing suit against Weaver until March 26, 2008. But Jameson's deposition took place on June 29, 2010, ten months after Guarantee had already filed this lawsuit on August 27, 2009, and a finding of when Bowen first considered filing suit is not a finding of when Guarantee knew or should have known. Nevertheless, Guarantee contends that there is evidence in the record that establishes that Guarantee discovered its legal injury in March 2008. But Guarantee had the burden to obtain findings by the trier-of-fact concerning when Guarantee discovered or should have discovered the misrepresentations. *See Barker*, 213 S.W.3d at 311–12; *Woods*, 769 S.W.2d at 517–18; *Patel*, 1998 WL 93746, at *1–2 (involving bench trial). And the trial court never made a finding about when Guarantee knew or should have known of the facts giving rise to Guarantee's claim. Because Guarantee did not obtain those findings from the trial court, Guarantee cannot rely on the discovery rule to toll the statute of limitations. *See Barker*, 213 S.W.3d at 312; *Woods*, 769 S.W.2d at 518; *Patel*, 1998 WL 93746, at *2. And because Guarantee did not file suit until August 27, 2009 and did not satisfy its burden to establish that

the discovery rule applied, we conclude that Guarantee's negligent misrepresentation claim is barred by the two-year statute of limitations.

We sustain Weaver's second issue. As a result, we reverse and render judgment that Guarantee take nothing on its claim.

## SUMMARY JUDGMENT DISMISSING WEAVER'S COUNTERCLAIM

In its fifth issue, Weaver argues that the trial court erred by granting summary judgment dismissing its counterclaim seeking a declaration that Guarantee was liable for the judgment for attorney's fees and other fees and costs awarded to Weaver in the arbitration. Weaver contends that (1) undisputed evidence established that Guarantee was the assignee, subrogee, and alter ego of J&V and stood in J&V's shoes as the financial beneficiary of any arbitration award and (2) Guarantee was liable under the doctrine of offensive collateral estoppel.

### Standard of Review—Summary Judgment

The trial court granted both the no-evidence and traditional summary judgment motions, dismissing the parts of Weaver's counterclaim based on assignment, subrogation, and collateral estoppel, and granted the no-evidence summary judgment motion, dismissing Weaver's alter ego counterclaim. We review a trial court's decision to grant or deny a motion for summary judgment de novo. *Mid-Century Ins. Co. of Tex. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007); *Beesley v. Hydrocarbon Separation, Inc.*, 358 S.W.3d 415, 418 (Tex. App.—Dallas 2012, no pet.). When the trial court's order granting summary judgment does not specify the basis for the ruling, as here, we will affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

When a party files both a no-evidence and a traditional motion for summary judgment, we consider the no-evidence motion first. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600

–11–

(Tex. 2004). When we review a no-evidence summary judgment motion, we examine the record in the light most favorable to the nonmovant. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). The no-evidence motion must specifically state the elements for which there is no evidence. TEX. R. CIV. P. 166a(i); *Bever Props., L.L.C. v. Jerry Huffman Custom Builder, L.L.C.*, 355 S.W.3d 878, 888 (Tex. App.—Dallas 2011, no pet.). The non-movant then has the burden to produce more than a scintilla of summary judgment evidence that raises a genuine issue of material fact as to each challenged element. TEX. R. CIV. P. 166a(i) & cmt. 1997; *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). More than a scintilla of evidence exists if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *Forbes*, 124 S.W.3d at 172. Summary judgment is improper if the nonmovant presents more than a scintilla of evidence supporting the disputed issue. *Id.* Less than a scintilla of evidence exists if the evidence is so weak that it does no more than create a mere surmise or suspicion of a fact. *Id.*

### Discussion—No-Evidence Motion for Summary Judgment

In its no-evidence motion for summary judgment, Guarantee argued that the trial court should grant summary judgment on (1) Weaver's counterclaim that Guarantee was J&V's assignee because there was no evidence that J&V assigned its rights and obligations with respect to Weaver to Guarantee, (2) Weaver's counterclaim that Guarantee was liable for the arbitration award under equitable or contractual subrogation theories because there was no evidence that Guarantee asserted rights of equitable or contractual subrogation, (3) Weaver's counterclaim that Guarantee was liable under the doctrine of offensive collateral estoppel because there was "no evidence that facts essential to the arbitration judgment were fully and fairly litigated by" Guarantee or that Guarantee and Weaver were adversaries in the arbitration, and (4) Weaver's

–12–

counterclaim that Guarantee was J&V's alter ego because there was no evidence that Guarantee caused J&V to be used to perpetrate an actual fraud.

## *Assignment*

### *Weaver's Arguments*

Weaver argues that it was entitled to recover the arbitration award it obtained against J&V from Guarantee because Guarantee was the assignee of J&V's rights in the arbitration between J&V and Weaver. Weaver claims that there was evidence that Guarantee would have been entitled to recover attorney's fees if J&V had prevailed in the arbitration, and, as a result, Guarantee was liable for attorney's fees awarded to Weaver against J&V in the arbitration. Quoting *Bloom v. Burkholder Corp.*, No. 05-94-01297-CV, 1995 WL 379272, at *2 (Tex. App.—Dallas May 30 1995, no writ) (not designated for publication), Weaver contends that Guarantee took "the cause of action subject to the same defenses that could have been asserted against the assignor." Relying on *Nathan A. Watson Co. v. Employers Mutual Casualty Co.*, 218 S.W.3d 797, 802–05 (Tex. App.—Fort Worth 2007, no pet.), as authority, Weaver argues that because Guarantee would have been entitled to recover attorney's fees if J&V had prevailed in the arbitration, Guarantee was liable for attorney's fees awarded to Weaver in the arbitration. Weaver contends that three documents also support its argument: (1) a Supplement to Collateral and Disbursement Agreement between J&V, the owners of J&V, Daniel C. Hurd and Dian H. Hurd, and Guarantee that stated that Guarantee had "the absolute right to control pursuit" of J&V's accounting malpractice claim against Weaver, including settlement of the claim, and (2) a Collateral and Disbursement Agreement between J&V, the Hurds, and Guarantee and a General Agreement of Indemnity (GAI) signed by J&V and the Hurds, which Weaver claims "both state[d] that they assign[ed] all of J&V's present and future causes of action to Guarantee." Weaver also argues that Guarantee exercised the rights of an assignee by spending over

$300,000 pursuing J&V's claims and "providing the entirety of the funding" for prosecution of the claims after December 2008.

*Guarantee's Arguments*

Guarantee argues that there was no evidence that J&V assigned any of its rights or obligations concerning Weaver to Guarantee, that there was no evidence Guarantee sued Weaver based on an assigned right from J&V, and that there was no evidence of an assignment by J&V to Guarantee in any documents, including the Supplement and GAI, that assigned a cause of action against Weaver to Guarantee or assigned J&V's non-bonded liabilities, such as a claim for attorney's and expert's fees, to Guarantee. Guarantee contends that the only assignment stated in the GAI concerns completing performance of a bonded contract and that the GAI did not mention Weaver.[4]

*Analysis*

We agree with Guarantee that Weaver did not raise a genuine issue of material fact that Guarantee was J&V's assignee of the claims and liabilities in the arbitration. "An assignment is construed to have been made when the owner of a right manifests its intention to transfer the right to an assignee[.]" *Comm. Structures and Interiors, Inc. v. Liberty Educ. Ministries, Inc.*, 192 S.W.3d 827, 833 (Tex. App.—Fort Worth 2006, no pet.). "[T]he assignee of a contract is not responsible for the assignor's obligations unless he expressly or impliedly assumes them." *NextEra Retail of Tex., LP v. Investors Warranty of Am., Inc.*, 418 S.W.3d 222, 226 (Tex. App.—Houston [1st Dist.] 2013, pet. filed).

The cases that Weaver relies upon to argue that Guarantee was an assignee are distinguishable. For example, *Bloom*, 1995 WL 379272, at *2, concerned whether an assignee of

---

[4] Guarantee argues that the case that Weaver cites to support its claim that Guarantee must pay Weaver's fees—*Bloom*, 1995 WL 379272, at *2—is distinguishable because *Bloom* concerned subjecting an assignee to the defense of the statute of limitations.

–14–

an insurance claim was subject to the same statute of limitations defense as the assignor. In contrast, this case involves a lawsuit by Guarantee based on its own claims, not based on J&V's claims. And in *Watson*, 218 S.W.3d at 802–05, the court held that the insurance companies that sued as subrogees and were seeking recovery in the lawsuit were also liable for the prevailing party's attorney's fees. However, Guarantee did not sue as a subrogee.

The GAI provided Guarantee with various rights in consideration for Guarantee's execution of bonds, but did not assign J&V's liabilities to Guarantee. Additionally, the terms of the GAI, the Collateral and Disbursement Agreement, and the Supplement did not include any assignment of J&V's liabilities in connection with its claims against Weaver. The GAI allowed Guarantee to "settle or compromise any claim, liability, demand, suit or judgment upon any BOND or BONDS executed or procured by it" and provided that J&V and the Hurds would indemnify Guarantee for any claims and losses that Guarantee suffered as a result of executing the bonds, including "by prosecuting or defending any action in connection with any BOND or BONDS[.]" Although J&V and the Hurds assigned Guarantee their rights and property in collateral, including inventory, receivables, and equipment, to enable Guarantee to use the collateral in the event of J&V's default, it specified that it did so to allow Guarantee to complete performance of and pay obligations incurred in performing a bonded contract. The GAI also authorized Guarantee, upon default by J&V or the Hurds, "to assert and prosecute any right or claim hereby assigned . . . and to compromise and settle any such right or claim on such terms as it considers reasonable under the circumstances in its sole and absolute discretion[.]" But no provisions of the GAI imposed liability upon Guarantee for expenses incurred in a malpractice suit by J&V against Weaver.

And in the Supplement to Collateral and Disbursement Agreement, Guarantee agreed to fund J&V's malpractice claim against Weaver up to $70,000 for attorney's fees, and reserved the

–15–

right to stop funding if Guarantee determined that the claim should no longer be pursued. The Hurds, individually and on behalf of J&V, granted Guarantee "the absolute right to control pursuit of the Malpractice Claim," including the "unconditional right[,]" in Guarantee's sole discretion, to settle the claim.[5] The Supplement supplemented the collateral that was available to satisfy J&V's and the Hurds' obligations to Guarantee to include the lawsuit. But the Supplement did not assign the claim or any liabilities to Guarantee.

In summary, we conclude that Weaver did not raise a genuine issue of material fact in response to Guarantee's motion for summary judgment on the assignment counterclaim. *See Lone Star Gas. Co. v. Mexia Oil & Gas, Inc.*, 833 S.W.2d 199, 201, 203 (Tex. App.—Dallas 1992, no writ) (declining to hold that "if an assignee receives any benefit, no matter how tangential, from the contract, then the assignee impliedly assumes all of the contract's burdens, no matter how tangential"). We conclude that the trial court did not err in granting no-evidence summary judgment on Weaver's counterclaim that Guarantee was J&V's assignee.

### *Subrogation*

#### *Weaver's Arguments*

Weaver argues that Guarantee was "the equitable subrogee of J&V's arbitration" because "Guarantee paid on the projects that J&V was liable for." Weaver also argues that the terms of the GAI, Collateral and Disbursement Agreement, and Supplement established "Guarantee's right to pursue reimbursement from a third party in exchange for Guarantee's payment of J&V's project defaults." Weaver contends that, because Guarantee's only damages resulted from bond losses it suffered from J&V's defaults on TxDOT projects, "Guarantee had contractual subrogation rights to the arbitration." Weaver argues that Guarantee acknowledged its

---

[5] The Supplement's language controls because it contained more specific terms concerning the funding of the malpractice action than the GAI or Collateral and Disbursement Agreement. *See Presley v. N.B. Masureel Veredeling*, 370 S.W.3d 425, 433 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *see also Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133–34 (Tex. 1994) (stating that specific provisions control over more general provisions).

subrogation rights in a provision of the Collateral and Disbursement Agreement that stated that the agreement did not prejudice "the legal and equitable rights of subrogation of the Surety." In addition, Weaver contends that the "Guarantee/J&V Arbitration was based on a contractual relationship between J&V and Weaver," that Guarantee "assumed 'the absolute right to control pursuit' of the arbitration" through the Supplement, including the "unconditional right" to settle the malpractice claim, and that the Supplement also provided that any recovery from the arbitration between J&V and Weaver "would go directly to Guarantee to reimburse it for the bond payments it made on behalf of J&V." Weaver argues that Guarantee's involvement in the arbitration proceeding was "[l]ike a typical subrogation lawsuit" because Guarantee "assumed control of its principal's claim against a third party," agreed to fund the principal's claim, and would be reimbursed from any recovery from the principal's claim for losses Guarantee paid on behalf of the principal.

Weaver argues that this case is "almost identical" to *Watson*, 218 S.W.3d at 802–05. In *Watson*, insurance companies that sued in subrogation argued that they were subrogated to the rights of their insured but not to its liabilities, including liabilities for attorney's fees. *Id.* at 803. The court held that when an insurer sues in subrogation under a contract, it is both entitled to all of its insured's rights and exposed to all of its insured's liabilities. *Id.* Weaver argues that, "[l]ike the insurance companies" in *Watson*, Guarantee would have sought its attorney's fees and costs if the arbitration was successful for J&V but denied its responsibility for attorney's fees and costs when J&V was unsuccessful, and that the *Watson* court "expressly rejected" this argument.[6]

---

[6] Weaver argues that, contrary to Guarantee's argument, this Court did not hold in *Weaver & Tidwell*, 2011 WL 635261, at *2, that Guarantee was not the subrogee of J&V's rights in the previous suit between J&V and Weaver but only that Guarantee did not bring a contractual subrogation claim in this suit. Weaver also argues that, because this Court did not have knowledge of the Supplement—which Weaver contends "would have been outcome determinative"—"the Court's previous opinion was based on fraud and should have no bearing in determining Guarantee's rights in the arbitration." Because of our resolution of this issue on other grounds, we do not address these arguments.

*Guarantee's Arguments*

Guarantee argues that the trial court correctly granted its no-evidence summary judgment motion dismissing Weaver's subrogation counterclaim because Guarantee "never proceeded as a subrogor [sic] of J&V" on either equitable or contractual grounds. It argues that there was no evidence that Guarantee "invoked a right of equitable subrogation" in a lawsuit or the arbitration, the evidence shows that it was not a party to the arbitration, it "did not assert a right against Weaver based on a debt [Guarantee] paid on behalf of J&V[,]" and it did not sue Weaver in subrogation. Guarantee argues that Weaver "cannot point to any" contrary evidence that would support its claim that Guarantee was an equitable subrogee in the arbitration. Guarantee likewise argues that the trial court properly granted the no-evidence motion for summary judgment on subrogation because there was no evidence Guarantee sued Weaver "in subrogation under a contractual right granted by J&V in the present suit or in the Arbitration" and there was no evidence Guarantee was a party to the arbitration.

*Analysis*

Contractual subrogation "is created by an agreement or contract that grants the right to pursue reimbursement from a third party in exchange for payment of a loss, while" equitable subrogation "does not depend on contract but arises in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter." *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex. 2007). In both contractual and equitable subrogation, the subrogee "stands in the shoes of" the subrogor, "obtaining only those rights held by" the subrogor against a third party, and subject to any defenses the third party held against the subrogor. *See id.*

Here, Weaver did not raise an issue of fact on whether Guarantee pleaded or otherwise asserted a subrogation interest in a judicial proceeding against Weaver. *See Casstevens v. Smith*,

269 S.W.3d 222, 228 (Tex. App.—Texarkana 2008, pet. denied) (stating that a right of subrogation "is not a substantive, tangible thing" that "can be seized and held independently of a judicial proceeding; it is a right of action only—that is, it must be established by a judicial proceeding"); *Monk v. Dallas Brake & Clutch Serv. Co.*, 697 S.W.2d 780, 782 n.2 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) ("[T]o be available, subrogation must be pleaded by the person claiming it."). The Supplement provided that Guarantee—in consideration for funding attorney's fees in J&V's malpractice claim against Weaver—had "the absolute right to control pursuit of" J&V's malpractice claim, including the unconditional right to settle the malpractice claim, and had the right to be reimbursed for costs it incurred and losses it suffered on the bonds (subject to other parties' priority rights of reimbursement). But Weaver has not provided and we have not located any authority, holding on these facts, that Guarantee asserted a right of subrogation in a judicial proceeding.[7] We agree with Guarantee that Weaver did not raise a genuine issue of material fact that Guarantee acted as contractual or equitable subrogee of J&V with respect to the arbitration and conclude that the trial court correctly granted no-evidence summary judgment on Weaver's subrogation counterclaim. As a result, we do not address the parties' other subrogation arguments.

### Offensive Collateral Estoppel

*Applicable Law*

Weaver also contends the trial court erred in granting Guarantee's no-evidence summary judgment motion on Weaver's counterclaim based on offensive collateral estoppel. A party may use the doctrine of offensive collateral estoppel "to estop a defendant from relitigating an issue that the defendant litigated and lost in prior litigation with another party." *Goldstein v. Comm'n*

---

[7] The case Weaver relies upon, *Watson*, 218 S.W.3d at 802–05, is distinguishable. In *Watson*, property insurers sued under the terms of a contract as subrogees of a home builder and acknowledged "that they step[ped] into the shoes" of their subrogor. *Id.* at 803. Here, Guarantee did not bring an action in subrogation against Weaver.

*for Lawyer Discipline*, 109 S.W.3d 810, 812 (Tex. App.—Dallas 2003, pet. denied). To invoke the doctrine of collateral estoppel, a party must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action, (2) those facts were essential to the judgment in the first action, and (3) the parties were cast as adversaries in the first action. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994). A trial court has broad discretion to determine whether to allow a plaintiff to employ collateral estoppel offensively. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979); *Goldstein*, 109 S.W.3d at 812–13.

### Weaver's Arguments

Weaver argues that it established all three elements of collateral estoppel because (1) the basis and amount of Weaver's attorney's fees were fully and fairly litigated in the arbitration, (2) the issue of attorney's fees was "essential because the contract stated the prevailing party was entitled to recover its attorneys' fees and costs[,]" and (3) "it cannot be disputed that Guarantee was in privity with J&V, or that Guarantee and Weaver were adversaries in the arbitration." In its response to Guarantee's summary judgment motion, Weaver argued that the evidence, including the terms of the Supplement, Collateral and Disbursement Agreement, and GAI, testimonial evidence, and J&V's finances, established privity by demonstrating Guarantee's control of J&V, that its interests were fully represented in the arbitration, and that it was J&V's successor in interest.

### Guarantee's Arguments

Guarantee contends that the trial court correctly granted the no-evidence summary judgment motion because (1) no facts were "fully and fairly" litigated in the arbitration concerning Guarantee's obligation to pay Weaver's fees "because there were simply no facts that gave rise to such a claim in the Arbitration" and (2) Guarantee and Weaver were not adversaries

in the arbitration. Guarantee argued in its motion for summary judgment that, because there was no evidence that Guarantee and Weaver were cast as adversaries in the arbitration or that the "facts essential to the judgment" in the arbitration were fully and fairly litigated by Guarantee, Weaver's collateral estoppel counterclaim should be dismissed.

*Analysis*

We agree with Guarantee that Weaver did not raise a genuine issue of material fact concerning whether the issue of Guarantee's liability to Weaver for the arbitration judgment was fully and fairly litigated. As a result, Weaver did not produce evidence on each of the elements of collateral estoppel that it was required to establish to invoke the doctrine. Consequently, we conclude that the trial court properly granted Guarantee's no-evidence summary judgment motion dismissing Weaver's offensive collateral estoppel counterclaim.

## Alter Ego

*Applicable Law*

Weaver contends that the trial court erred in granting Guarantee's no-evidence summary judgment motion dismissing Weaver's alter ego counterclaim. The ability to impose alter ego liability is limited: an affiliate of a corporation cannot be held liable for a contractual obligation of the corporation unless the affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee for the direct personal benefit of the affiliate. *See* TEX. BUS. ORGS. CODE ANN. § 21.223 (West 2012); *Latham v. Burgher*, 320 S.W.3d 602, 606 n.1 (Tex. App.—Dallas 2010, no pet.) (stating that a "finding of actual fraud" is "a threshold finding necessary for the ultimate finding of alter ego"). In the context of alter ego, actual fraud involves dishonesty of purpose or intent to deceive. *Lantham*, 320 S.W.3d at 607.

–21–

***Weaver's Arguments***

Weaver argues that the "evidence overwhelmingly established" that Guarantee was J&V's alter ego in the arbitration between J&V and Weaver. Weaver argues this evidence includes Guarantee's payment of over $300,000 to finance J&V's expenses in the arbitration, Guarantee's payment of "all of J&V's expenses since at least March 2008[,]" Guarantee's assumption of control over J&V's remaining TxDOT projects and rehiring J&V to complete the projects, and Guarantee's control over J&V's revenue from the projects. Weaver contends that the "overwhelming evidence" establishes actual fraud, including that Guarantee financed and controlled the arbitration for Guarantee's direct benefit, Guarantee entered into the arbitration agreements for the "dishonest purpose" of securing J&V's "cooperation in not one, but ***two lawsuits*** against Weaver[,]" and Guarantee intended to deceive Weaver about "the true nature of its financing and control" of the arbitration by not disclosing the Supplement.

***Guarantee's Arguments***

Guarantee argues that the trial court properly granted its no-evidence summary judgment motion on Weaver's alter ego counterclaim because there was "no evidence of fraud." Guarantee argues that its exercise of the rights and obligations it had under the performance bonds and GAI and its funding of a lawsuit that J&V initiated but could no longer afford to prosecute were "not evidence of dishonesty of purpose or intent to deceive[.]" Guarantee contends that, regardless of whether it funded the litigation or cooperated with J&V, it would have been entitled to any proceeds from the arbitration. Guarantee also argues that Weaver does not identify any obligation Guarantee had to disclose the agreements it had with J&V to support Weaver's argument that Guarantee committed fraud by not disclosing the agreements.

*Analysis*

We agree with Guarantee that Weaver did not produce any summary judgment evidence that raised a genuine issue of material fact concerning whether Guarantee caused J&V to perpetrate an actual fraud on Weaver for Guarantee's benefit. The evidence that Weaver references—that Guarantee paid J&V's expenses and controlled its revenues and unfinished TxDOT projects—were rights that Guarantee had pursuant to the GAI. And evidence of Guarantee's agreement in the Supplement to fund J&V's expenses that it could not afford in its previously-filed suit against Weaver and Guarantee's subsequent filing of a different cause of action in this suit against Weaver did not show dishonesty of purpose or intent to deceive required for a finding of actual fraud and raise a genuine issue of material fact. *See Metroplex Mailing Servs., LLC v. RR Donnelley & Sons Co.*, 410 S.W.3d 889, 896–98 (Tex. App.—Dallas 2013, no pet.). As a result, we agree with Guarantee that the trial court properly granted Guarantee's no-evidence summary judgment motion, dismissing Weaver's alter ego counterclaim.

Consequently, we overrule Weaver's fifth issue.

## CONCLUSION

Given our resolution of the two issues above, it is unnecessary for us to address Weaver's remaining issues. TEX. R. APP. P. 47.1. We reverse and render judgment that Guarantee take nothing on its claim and affirm the trial court's dismissal of Weaver's counterclaim on summary judgment.

/Elizabeth Lang-Miers/
_____
ELIZABETH LANG-MIERS
JUSTICE

120750F.P05

–23–



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

WEAVER AND TIDWELL, L.L.P.,
Appellant

No. 05-12-00750-CV         V.

THE GUARANTEE COMPANY OF
NORTH AMERICA USA, Appellee

On Appeal from the 191st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 09-11140.
Opinion delivered by Justice Lang-Miers,
Justices O'Neill and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** and **RENDERED** in part. We **REVERSE** that portion of the trial court's judgment on the negligent misrepresentation claim by appellee The Guarantee Company of North America USA and judgment is **RENDERED** that appellee The Guarantee Company of North America USA take nothing on its negligent misrepresentation claim against appellant Weaver and Tidwell, L.L.P. We **AFFIRM** the trial court's dismissal of appellant Weaver and Tidwell, L.L.P.'s counterclaim on summary judgment.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 8th day of April, 2014.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE