

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00233-CV

_____

IN THE INTEREST OF V.J. AND V.J., CHILDREN

On Appeal from the 231st District Court
Tarrant County, Texas
Trial Court No. 231-699602-21

Before Sudderth, C.J.; Kerr and Womack, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant, V.J., appeals from a post-appearance default judgment against him in a suit affecting the parent–child relationship (SAPCR), in which he had also sought a divorce, claiming to have been married to C.M., Appellee and the mother of his children. V.J. raises four issues, in which he argues generally that he is entitled to a new trial for lack of notice, and a fifth issue complaining about the trial court's temporary orders. He also argues that if his notice of appeal was not timely for purposes of securing a regular appeal, we should review his appeal as a restricted appeal. To preserve our jurisdiction over the merits, we construe V.J.'s appeal as a restricted appeal, and we affirm the trial court's judgment.

## II. BACKGROUND

Because the procedural background of this case frames our ultimate appellate review, we provide a detailed description of the filings and events at the trial-court level, including both the prejudgment and postjudgment stages.

### A. Pretrial Filings and Temporary Orders

V.J. filed a pro se Original Petition for Divorce on April 29, 2021. He claimed to be married to C.M. because "on or about October 2013, . . . they agreed to be married; and after the agreement[,] they lived together in this state continuously as husband and wife; and they represented to others in Texas and elsewhere that they were married until February 2021." He sought a division of their purported

2

community property, consisting mainly of a residence in Arlington and a business in Red Oak, and he asked for the parties to be appointed joint managing conservators of their two children, with him as the conservator with the exclusive right to designate the children's primary residence. V.J. further sought a temporary restraining order, temporary injunction, and permanent injunction prohibiting C.M. from excluding him from the purported marital residence, based on his allegation that C.M. had moved out and "secreted [the] children away from" him. Finally, V.J. brought claims against C.M. for breach of fiduciary duty—in which he included allegations of actual and constructive fraud and waste of assets—breach of contract, and trespass to try title.

On May 26, 2021, the trial court signed a temporary restraining order and set a June 9, 2021 hearing date for the temporary-injunction request and for temporary orders concerning the children. C.M. filed a pro se motion for a continuance. On June 9, 2021, V.J. and C.M. signed appearance forms, in which they both represented that they had been advised of their right to employ counsel but chose to represent themselves at that time. That same day, after a hearing, an associate judge entered a mutual temporary injunction and ordered the parties to report to Family Court Services (FCS) for intake based on "[a]llegations of FV [family violence] agst ea. other & the children." According to the court order, C.M. alleged that Child Protective Services had been involved with the family already, but V.J. claimed that C.M. was "lying & using [the] allegations as a tactic for the divorce/custody case." The

3

associate judge ordered that V.J. would have a minimum of two hours per week supervised visitation with the children.

C.M. filed a pro se answer on June 18, 2021. After a hearing on September 13, 2021, which C.M. attended but V.J. did not attend, an associate judge found a "history of abuse by [V.J.] with subject & other children" and of family violence against C.M. by V.J. "in [the] presence of the children." The associate judge made the following orders "in [the] children's best interest . . . for their safety & welfare": (1) C.M. was named as the temporary sole managing conservator; (2) V.J. was to have supervised visitation and no other access; and (3) V.J. was required to take a batterer's intervention course. The associate judge further found that C.M. contested that the parties were married, either ceremonially or by common law. The associate judge therefore awarded C.M. temporary, exclusive use of the residence; ordered V.J. to vacate it by September 30, 2021; and ordered C.M. to list it for sale by October 1, 2021.

On September 17, 2021, V.J. filed a motion in which he denied receiving timely notice of the September 13, 2021 hearing date, contested the findings made as a result of the hearing, and sought a stay of the associate judge's rulings. He also filed a motion for a de novo hearing before the presiding judge. On September 20, 2021, he filed a "Notice to Designation of Email Address," in which he notified C.M. and the court "that he wishe[d] to . . . receive service and notice and all filings in this case via" a specific email address (referred to herein as the First Gmail Address).

4

Between September 17 and September 22, 2021, C.M. obtained counsel. On September 22, 2021, C.M. filed an original counterpetition, in which she sought to be appointed sole managing conservator of the children and alleged that V.J. had "engaged in a history or pattern of child abuse," as well as a "history or pattern of . . . family violence during the two-year period preceding the date of filing of th[e] suit." She requested that the court either deny V.J. access to the children or enter a possession order designed to protect her and the children's safety and welfare. C.M. also pleaded for child support.

On September 24, 2021, the presiding trial judge held a hearing, at which both V.J. and C.M. appeared.[1] The trial court entered interim temporary orders allowing V.J. supervised visitation only, ordering that the residence be listed for sale, requiring V.J. to vacate the residence, and keeping in place the remainder of the associate judge's previous orders.[2] The trial court set a hearing on the merits for additional temporary orders for October 12, 2021.[3]

_____

[1]In correspondence with this court, the court reporter referred to this hearing as a De Novo Swear-in.

[2]The trial court signed this order on October 12, 2021. Beginning with these interim temporary orders, all orders in the case were signed by the presiding trial judge.

[3]C.M.'s counsel was allowed to withdraw before the October 12 hearing. In the order approving the withdrawal, an associate judge found "that the last known address of [C.M.] is subject to a nondisclosure through the Attorney General confidentiality program." By the time of the October 12 hearing, C.M. had retained new counsel.

According to later-signed orders,[4] both V.J. and C.M. appeared at the October 12 hearing, after which the trial court appointed a receiver to take possession of and sell the residence. The trial court also found that V.J. was working and ordered him to pay monthly child support. Nothing in the record shows that V.J. contemporaneously objected to the lack of a reporter's record for the September and October temporary-orders hearings.

On January 7, 2022, a hearing for additional temporary orders was set for February 11, 2022. The trial judge signed the hearing notice, and under the certificate of service was a note: "[V.J.] by e-filing manager." On February 1, 2022, V.J. filed an Emergency Motion for Continuance to Allow Pro Se Petitioner to Retain Legal Counsel. In that motion, he alleged that C.M.'s counsel had failed to consult him before setting the hearing date and that he was incarcerated in the Denton County Jail and could not attend the February 11, 2022 hearing.[5] He asked "for [a] forty-five (45) day[] continuance so that he [could] retain legal counsel to represent him in this matter going forward." He also filed an emergency motion to cancel the February 11,

_____

[4]The only order signed that day pertained to V.J.'s supervised visitation with the children at the FCS Visitation Center.

[5]V.J. never requested to attend this or any other prejudgment hearing via alternate means.

6

2022 hearing on the same grounds.[6]  The record does not contain a ruling on these motions.

The handwritten report from the February 11, 2022 hearing—which was signed by the trial court—states, "Court finds [V.J.] is incarcerated at this time.  Court finds he opened his email proving notice of these proceedings."  The trial court ordered that C.M. could move back into the residence and apply for passports for the children to take them to Mexico in May for a wedding.

That same day, the trial court also signed a separate document entitled Notice of Final Trial, which notified the parties "that the *final trial . . .* [was] specially set for April 4, 2022 at **9:30 o'clock a.m.**[] before the 231st District Court located in the Family Law Center, 5th floor, 200 East Weatherford Street, Fort Worth, Texas 76196."  The contested items checked on the form setting order were "Common law vs No Marriage" and child support.  The trial court also ordered the following:

- "All **discovery** shall be completed in accordance with the Texas Rules of Civil Procedure."

- "Each party or attorney shall provide a **Witness List** to the Court with an extra copy for the Court Reporter."

- "All **exhibits** to be introduced at trial shall be pre-marked before trial.  Each party or attorney is responsible for pre-marking their exhibits or meeting with the Court Reporter for pre-marking of exhibits.  Parties pre-marking their exhibits shall provide an **Exhibit List** to the Court Reporter just prior to the commencement of trial."

---

[6]V.J. e-filed both this motion and the motion for continuance using the First Gmail Address.

- "Each party or attorney shall provide to the Court a <u>proposed property division</u> in typewritten form on the date of trial. If personal property items are contested, the party or attorneys shall compare proposed divisions prior to trial and be sure that each side has the same items in controversy."

On March 30, 2022, V.J. filed a "Petitioner's Emergency Motion for Continuance Final Hearing," in which he alleged that he "want[ed] to preserve his parental rights"; that he had been "detained in the Denton County [J]ail"[7] with only limited communication from January through March 2022[8]; and that because of that limited communication ability, he had not been able to obtain counsel. He stated, "Petitioner understands that if he is not present for this final hearing, by default he will lose his parental rights." Therefore, V.J. asked for a twenty-day continuance to secure counsel. V.J. did not object to having received less than forty-five days' notice of the final trial, nor did he seek to attend trial by alternate means. *See* Tex. R. Civ. P. 245.

On April 1, 2022, V.J. filed a Petitioner's Amended Emergency Motion to Continue Final Hearing, in which he reiterated that he was incarcerated and knew about the trial date. He also alleged that he had secured legal representation on March 31, 2022, but the firm had terminated that representation on the morning of April 1, 2022 "because they [were] no longer . . . able to appear in court on April 4,

---

[7]In his postjudgment filings, V.J. said that he had been incarcerated since November 2021.

[8]V.J. attributed the communications problem to "several lockdowns related to Covid outbreaks," as well as "a new phone system integration," which had since been resolved.

8

2022, for the hearing." V.J. again asked for a twenty-day continuance for the purpose of securing counsel. As in his March 30, 2022 motion for a continuance, V.J. did not object to having received less than forty-five days' notice of the final trial, nor did he seek to attend trial by alternate means. Neither this motion nor the March 30, 2022 motion was verified.

## B. Final Trial and Default Judgment

The trial court held the final trial, as scheduled, on April 4, 2022. V.J. did not appear, and the trial judge verbally denied V.J.'s filed requests for a continuance.

C.M. testified that she had never been married to V.J., had never agreed to marry V.J., and had never held herself out to be his wife. She introduced into evidence her 2014, 2019, and 2020 tax returns, which she had filed individually as head of household. Those returns show that in 2014, C.M. claimed the older of the parties' two children as a dependent, and in 2019 and 2020, she claimed both of their two children as dependents.[9] She also testified that she had purchased the Arlington residence in October 2014. C.M. is listed as the sole grantee on the deed as "an unmarried woman," and a December 2019 loan modification agreement lists C.M., "a single woman," as the sole borrower. C.M. also presented evidence that in 2017 V.J. had filed a divorce petition against A.W., whom he had married in 2003.

---

[9]The younger of her two children with V.J. was born in 2015. C.M. has another child who was not part of the SAPCR.

9

C.M. testified that in 2018, she had applied for domestic-violence protective services in Florida because of V.J.'s violence toward her. She also took classes at SafeHaven while in Texas.

The trial court admitted into evidence C.M.'s list of requested relief, which included the following, among other things: (1) that C.M. be named sole managing conservator of the children and that V.J. be named possessory conservator; (2) that V.J. pay C.M. $400 per month in child support and $144 per month in medical support; (3) a finding that she and V.J. were not married; (4) that the residence be confirmed as C.M.'s separate property; (5) $15,000 in attorney's fees but only in the event of an appeal; and (6) a permanent injunction restricting V.J. from contacting her, from coming closer than 500 feet from her residence or workplace, and from coming closer than 1,000 feet from the children's school or after-school programs. C.M. testified that she was also asking for the trial court to cancel the receiver order for the property. She further testified that V.J. had not paid any of the temporary child support the court had ordered, for which he was in arrears $2,412.42. Finally, C.M. testified that the children were afraid of V.J., and she asked that his visitation with them be supervised.

The trial court signed a final order the same day—April 4, 2022—finding V.J. to be in default and incorporating all of C.M.'s requests. That day, the trial court also signed an order memorializing the October 12, 2021 temporary orders and an order containing the same substance as the handwritten February 11, 2022 order.

10

## C. V.J.'s Motion for New Trial

On April 5, 2022, the trial-court clerk emailed C.M.'s attorney, asking for C.M.'s attorney to submit a certificate of last-known address and an "Austin form." The email was also sent to the First Gmail address. The same day, C.M.'s attorney filed a certificate of last-known address for V.J. at the Denton County Jail's mailing address; she served V.J. with the notice via e-filing to the First Gmail Address.

On May 5, 2022, at 9:38 a.m., V.J. e-filed a verified[10] motion for new trial, using the First Gmail Address. In the text of this motion, V.J. unequivocally stated that he had received notice of the judgment on April 5, 2022. V.J. also attached an email chain containing the following messages, all dated April 5, 2022: (1) a 2:06 p.m. email purporting to be from him[11] to the trial-court clerk, asking for "copies of the two temporary orders and the final order that [were] issued on Monday, April 4, 2022";

---

[10]V.J. included an unsworn declaration substantially in the form prescribed by Texas Civil Practice and Remedies Code Section 132.001(e). Tex. Civ. Prac. & Rem. Code Ann. § 132.001(e). Documents become sworn copies when they are attached to an unsworn declaration stating under penalty of perjury that the person making the unsworn declaration has personal knowledge that the copies of the documents attached are correct copies of the originals. *In re Leonard*, No. 05-23-00546-CV, 2023 WL 3944376, at *1 (Tex. App.—Dallas June 12, 2023, orig. proceeding) (mem. op.).

[11]The originating email address for V.J.'s request—and the email address to which the trial-court clerk responded—was not the First Gmail Address. However, V.J. had used that email address (the Second Gmail Address) in several of the documents attached to his prejudgment filings in corresponding with various persons—including C.M.'s counsel. Additionally, in a pro se motion for continuance filed before she obtained counsel, C.M. had listed the Second Gmail Address as V.J.'s email address for service.

11

(2) a 2:17 p.m. response from the clerk that the copies would be sent upon payment of a copying fee; (3) a subsequent email from the Second Gmail Address with a confirmation number for the payment; and (4) a 3:36 p.m. responsive email from the trial-court clerk to the Second Gmail Address with "the requested copies" attached.

On May 12, 2022, and May 24, 2022, respectively, V.J. e-filed from the First Gmail Address a verified amended motion for new trial and a verified second amended motion for new trial, in which he backtracked on the date he received notice of the final judgment. Although he attached to both filings the April 5, 2022 email correspondence with the trial-court clerk from the Second Gmail Address, he claimed that he did not actually receive notice of the final judgment until April 27, 2022, and that it was his cousin—who had been helping him—who had "purchased" the final judgment on April 5, 2022. According to V.J., the final judgment was delivered to the Denton County Jail by UPS on April 26, 2022,[12] and delivered to him by jail staff the next day. V.J. stated in both motions that he was "only able to file [m]otions to the court by dictating the contents of his [m]otions to a third party over the telephone, which is tedious and time consuming."

V.J. also attached to both motions an affidavit from his cousin, in which she stated that she had ordered and paid for the final judgment on April 5, 2022, but that she had not sent it to V.J. right away: "Due to a heavy work schedule, by the time my

_____

[12]V.J. attached a printed confirmation of delivery of a package to the jail on April 26, 2022, but he claimed that the jail did not deliver that package to him until the next day.

work shifts ended, the US postal service was closed.  Eventually, I was able to mail the final order via UPS, and it was received at the Denton County Jail on **April 26th, 2022**." She did not say on what date she actually mailed the final judgment to V.J. V.J.'s cousin further averred that, "[o]n **April 27th, 2022[,]** while [she was] speaking with [V.J.] and informing him of the Final Order, [V.J.] asked [her] to mail a copy of the Final Order to him as soon as possible," and she informed him that she had done so and that it had been delivered the day before.  V.J.'s cousin further averred that V.J. had dictated the contents of his original motion for new trial to her over the phone on May 1, 2022, and she had both "accidentally left out the fact that [V.J.] told [her] to specify the date (i.e., **April 27, 2022**) that [she] told him of the Final Order" and "mistakenly attributed the April 5th, 2022[,] receipt of the final order to [V.J.] as opposed to [herself]."

Accordingly, V.J. contended in his amended and second amended motions for new trial that he personally did not receive notice of the final judgment until April 27, 2022; therefore, his motion for new trial was timely under Rule 306a(4).  Tex. R. Civ. P. 306a(4).

C.M. did not respond to any of V.J.'s sworn postjudgment motions or provide any controverting evidence.

Although the original motion for new trial had been filed one day late, the trial court held a hearing on the motion on June 17, 2022.[13] In arguing the motion, V.J. told the trial court that he "never" received notice of the final trial date. C.M.'s counsel told the trial court that she had the final-trial notice delivered to V.J. by regular mail in care of the Denton County Jail, but she also noted that V.J. had confirmed in his pleadings that her assistant had sent him a reminder on March 1, 2022. V.J. did not present any other evidence related to the date he received the final judgment; he referred the court to his cousin's affidavit, and he argued that even though he had received notice of some things by email, someone else had to read the email for him while he was incarcerated. The trial court verbally denied the motion for new trial, and V.J. filed a notice of appeal on June 21, 2022.

This court notified V.J. that because his motion for new trial was filed one day late, "it appears that this appeal was filed as a restricted appeal." *See* Tex. R. App. P. 26.1 & (a)(1) (providing that—in absence of timely filed motion for new trial or other specifically listed postjudgment filing—notice of appeal must be filed within thirty days after judgment is signed), (c) (providing that notice of restricted appeal may be filed within six months after the judgment is signed). Because V.J.'s notice of appeal did not include all of the requirements for a restricted appeal, we directed him to amend his notice of appeal. *See* Tex. R. App. P. 25.1(d)(7) (listing additional

---

[13]For this hearing, V.J. filed an Emergency Motion to Appear by Telephone or by Affidavit. The trial court allowed V.J. to appear via Zoom.

requirements notice of appeal must include for restricted appeal). V.J. filed an amended notice of appeal, but in it he stated, "**This is a regular appeal** pursuant to Tex. R. App. P. Rule 26.1(a)(1), not a restricted appeal . . . ." V.J. claimed that he had met the requirements in Rule 306a(4) and (5) for extending the time to file a motion for new trial; therefore, his motion for new trial was timely filed and extended the regular-appeal deadline. Tex. R. Civ. P. 306a(4)–(5); *see also* Tex. R. App. P. 4.2(a)(1) (providing for extension of filing date for notice of regular appeal if the appellant did not receive notice or acquire actual knowledge of final judgment within twenty days after its signing). In the docketing statement filed with V.J.'s amended notice of appeal, he also asserted that he did not receive the judgment until April 27, 2022. Accordingly, we abated the appeal for the trial court to make findings under Rule 306a(4) and (5) of the date V.J. first received notice or acquired actual knowledge of the final judgment. *See* Tex. R. App. P. 4.2(c).

In accordance with our order, the trial court filed a supplemental clerk's record, in which it included written findings that V.J. had received notice of the final judgment on April 5, 2022. The trial court based its ultimate finding on the fact (1) "that on April 5, 2022[,] at 2:17 p.m.[,] copies of the [o]rder were requested by [V.J.] via his email[, (2) that c]onfirmation was emailed by the TCDC231 at 3:36 p.m. April 5, 2022, [and (3)] that the request was filled and the requested copies were attached and sent." The trial court also found that V.J. had judicially admitted in his May 5, 2022 motion for new trial that he had received the final judgment on April 5,

15

2022. After receiving the supplemental clerk's record, we continued the appeal so that the parties could file briefing on the jurisdictional question.

### III. DISCUSSION

V.J. raises five issues in his pro se brief: (1) whether this court has jurisdiction over this appeal as a regular appeal; (2) whether the trial court abused its discretion by denying V.J.'s motion for new trial because he proved he was not properly notified of the final trial setting according to Texas Rule of Civil Procedure 245, and thus, according to V.J., he proved that he received no notice of the final trial setting at all; (3) whether V.J. has made the requisite showing that he is entitled to a new trial under *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 125–26 (Tex. 1939), even if he failed to prove lack of notice; (4) whether—if jurisdiction exists solely for a restricted appeal—he has affirmatively shown error on the face of the record; and (5) whether the evidence was legally and factually sufficient to support the trial court's September 13, 2021; September 24, 2021; and October 12, 2021 temporary orders.[14]

### A. Jurisdiction Over Restricted Appeal Only

In considering V.J.'s first issue, we must decide whether we have jurisdiction over this appeal as a regular appeal, which depends on whether V.J.'s May 5, 2022 motion for new trial was timely filed. If V.J. failed to prove that he did not receive notice of the final judgment within twenty days after the trial court signed it, both his

---

[14]This complaint turns primarily on V.J.'s argument that the trial court reversibly erred by failing to require the court reporter to make a record of the temporary-orders hearings.

motion for new trial and notice of appeal were untimely, and he failed to invoke this court's jurisdiction over a regular appeal. *See* Tex. R. App. P. 4.2(a)(1), 26.1(a)(1); Tex. R. Civ. P. 306a(4)–(5), 329b(a). We must then consider whether he meets the requirements for a restricted appeal.

### 1. Motion for New Trial Untimely

A motion for new trial must be filed within thirty days after the complained-of judgment is signed. Tex. R. Civ. P. 329b(a). If a motion for new trial is not timely filed, a trial court's plenary power to grant a new trial expires. Tex. R. Civ. P. 329b(d); *see also* Tex. R. Civ. P. 306(a)(1) (providing that date judgment is signed is used to determine plenary power). Judicial action taken after the trial court's plenary jurisdiction over a cause has expired is a nullity. *State ex rel. Latty v. Owens*, 907 S.W.2d 484, 486 (Tex. 1995).

An exception to the thirty-day filing rule applies when a party did not receive timely notice of the final judgment. Rule of Civil Procedure 306a(4) provides,

> If within twenty days after the judgment or other appealable order is signed, a party adversely affected by it or his attorney has neither received the notice required by paragraph (3) of this rule nor acquired actual knowledge of the order, then with respect to that party all the periods mentioned in paragraph (1) [including the date for filing a motion for new trial] shall begin on the date that such party or his attorney received such notice or acquired actual knowledge of the signing, whichever occurred first, but in no event shall such periods begin more than ninety days after the original judgment or other appealable order was signed.

17

Tex. R. Civ. P. 306a(4); *see* Tex. R. App. P. 4.2(a)(1). To establish the date of receipt or actual notice of the final judgment, Rule 306a(5) first requires the filing of a sworn motion establishing the date the party or its counsel first learned of the judgment. Tex. R. Civ. P. 306a(5); *In re Lynd Co.*, 195 S.W.3d 682, 685 (Tex. 2006) (orig. proceeding); *see also* Tex. R. App. P. 4.2(b). "[I]f the party . . . (1) complies with the sworn motion, notice[,] and hearing requirements mandated by Rule 306a(5), and (2) proves it received notice of the judgment more than twenty (but less than ninety-one) days after it was signed," then "[p]ost-judgment procedural timetables—including the period of the trial court's plenary power—run from the day [the] party receives notice of [the] judgment, rather than the day judgment is signed." *Lynd Co.*, 195 S.W.3d at 685. The sworn Rule 306a(5) motion establishes a prima facie case that the party lacked timely notice and invokes the trial court's jurisdiction "for the limited purpose of holding an evidentiary hearing to determine the date on which the party or its counsel first received notice or acquired knowledge of the judgment." *Id.*

V.J. contends that he proved he first received notice of the final judgment on April 27, 2022, more than twenty days after the trial court signed the judgment on April 4, 2022, but before the ninety-first day after it was signed.

We review the trial court's finding of the date a party received notice of judgment according to the legal and factual sufficiency standards of review. *Scott v. S2S Domain Waco Assocs., LLC*, No. 10-20-00133-CV, 2021 WL 5639086, at *4 (Tex. App.—Waco Dec. 1, 2021, pet. denied) (mem. op.); *Nathan A. Watson Co. v. Emps.*

18

*Mut. Cas. Co.*, 218 S.W.3d 797, 800–01 (Tex. App.—Fort Worth 2007, no pet.). Under both standards, the trial judge, as the factfinder, is the sole arbiter of the weight of the evidence and the witnesses' credibility. *See Nathan A. Watson Co.*, 218 S.W.3d at 801; *Texaco, Inc. v. Phan*, 137 S.W.3d 763, 767–68 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

### a. Legal and Factual Sufficiency Standards of Review

When a party attacks the legal sufficiency of an adverse finding on an issue on which the party had the burden of proof, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Cath. Diocese of El Paso v. Porter*, 622 S.W.3d 824, 834 (Tex. 2021). In determining whether legally sufficient evidence supports the challenged finding, we must consider evidence favorable to the finding if a reasonable factfinder could, and we must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018) (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)).

When the party with the burden of proof challenges the factual sufficiency of a failure to find, the party must show that the failure to find is against the great weight and preponderance of the credible evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237,

242 (Tex. 2001); *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex. 1988); *see*

*Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681–82 (Tex. 2006).

### b. Application of Standards

In his sworn second amended motion for new trial, V.J. stated (1) that he "did not have actual notice of the [final judgment] until April 27th, 2022," (2) that because Denton County Jail has "no computer, law library, e-mail access, or internet access . . . that [would] allow [him] to type up any [m]otion to the court," he had to dictate "the contents of his [m]otions to a third party over the telephone," and (3) that his cousin was who had "purchased" the final-judgment copy from the trial-court clerk. V.J.'s cousin confirmed that she had purchased the copy on April 5, 2022, but averred that she had delayed mailing it to V.J. and that when he dictated the contents of his original motion for new trial to her on May 1, 2022, she "accidentally left out" that V.J. had told her he received the final-judgment copy on April 27, 2022, and "mistakenly" wrote April 5, 2022, as the date he had received notice.

V.J. contends that because C.M. did not controvert his sworn motion and his cousin's affidavit, the trial court was required to accept them as conclusive proof. *See City of Keller*, 168 S.W.3d at 820 (explaining that factfinder "cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted"). But even if, despite its internal inconsistencies, V.J.'s motion and attached evidence may have been sufficient to present a prima facie case that he did not receive notice of the final

20

judgment until April 27, 2022, *see Lynd Co.*, 195 S.W.3d at 685, when considered with V.J.'s other evidence in the record, they created a fact issue for the trial court to resolve. For example, V.J. also attached to the second amended new trial motion April 1, 2022[15] emails from the Second Gmail Address—from which the final-judgment copy was requested and received on April 5, 2022—that appeared to be written by him, including several to his cousin's email address forwarding emails to her with the message, "Please print."[16] He also attached emails to and from the Second Gmail Address that show he used that address both before and after he filed suit, with third parties and with C.M. Additionally, V.J. had previously appeared before the trial court, giving the judge the opportunity to assess his credibility.[17]

Moreover, even if the trial court could not have considered V.J.'s assertion in his original motion for new trial—that he received actual notice of the final judgment on April 5th, 2022—as a judicial admission because his amended motions superseded

---

[15]V.J. was incarcerated at this time.

[16]For example, one of the forwarded messages specifically referred to his cousin in the third person, "There has been a major issue brought to my attention this morning. My cousin, . . . whom as you know has been helping me find legal representation for my divorce case received a call from a [law firm] representative. My cousin was simply told that I'll be receiving a full refund, as there is no longer an attorney that can take my case."

[17]To the extent V.J.'s statement at the postjudgment hearing—"I actually got actual notice of the hearing on April 26th, I believe"—could be considered testimony rather than argument, the trial court could have also considered that conflicting statement along with the other evidence contradicting V.J.'s averment that he did not receive notice of the final judgment until April 27, 2022.

21

the original motion, *see Lake Jackson Med. Spa, Ltd. v. Gaytan*, 640 S.W.3d 830, 839 (Tex. 2022) ("[A]llegations contained in a pleading that is superseded by an amended pleading are not 'conclusive and indisputable judicial admissions.'"), the trial court nevertheless could have considered that assertion as part of the larger picture and weighed the evidence supporting it (the email responses from the trial-court clerk to the Second Gmail Address) against V.J.'s sworn second amended motion and his cousin's affidavit, *cf. Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 82 (Tex. 2018) (describing summary-judgment "sham affidavit rule," which provides that "if a party submits an affidavit that conflicts with the affiant's prior sworn testimony and does not provide a sufficient explanation for the conflict, a trial court may disregard the affidavit when deciding whether the party has raised a genuine fact issue to avoid summary judgment"); *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007) (holding that statements from superseded pleadings were not hearsay and therefore admissible).

Finally, we may presume the trial court took judicial notice of its own records and the prior pleadings in the case, which show that the trial court specifically found that "[e]vidence was presented" at the February 11, 2022 temporary-orders hearing that V.J.—although incarcerated at the time—"opened his email proving notice of th[at] proceeding[]." *See In re Est. of Clark*, 198 S.W.3d 273, 275 (Tex. App.—Dallas 2006, pet. denied) ("The trial court could also take judicial notice of its own records and prior pleadings in the case with or without a request of a party."); *Bob Smith Bail*

22

*Bonds, Sur. v. State*, 963 S.W.2d 555, 556 (Tex. App.—Fort Worth 1998, no pet.) ("A trial court may take judicial notice of its own file at any stage of proceedings and is presumed to have done so with or without a request from a party."). Thus, the record shows that before the final trial, the trial court had found that V.J. was able to communicate and receive notice via email from the Denton County Jail.

V.J. compares the facts of this case to those in *Latter & Blum of Tex., LLC v. Murphy*, No. 02-17-00463-CV, 2019 WL 3755765, at *1, *4 (Tex. App.—Fort Worth Aug. 8, 2019, pet. denied) (mem. op.), but that case is distinguishable. In *Latter & Blum*, an attorney filed an answer for one defendant and in that answer purported to also file it on behalf of Latter & Blum, a codefendant whom he did not represent. *Id.* After a default judgment against it, Latter & Blum filed a combined Rule 306a(5) motion and motion for new trial. *Id.* at *1. In an affidavit attached to the motion, the attorney who had filed the answer averred that he had never represented Latter & Blum and that the statement to the contrary in the answer he had filed was a mistake. *Id.* at *4. Latter & Blum's registered agent filed an affidavit denying that he had been served with the suit and averring that the first time that Latter & Blum learned of the default judgment was on November 1, 2017, eighty-five days after the judgment was signed. *Id.* at *1, *4–5. All of this evidence was uncontroverted. *See id.* at *1, *4, *8. We held that "Latter and Blum's postjudgment and appellate deadlines ran from November 1, 2017," and therefore that its November 8, 2017 motion for new trial was timely filed. *Id.* at *7.

But unlike in *Latter & Blum*, V.J.'s own motion contained conflicting evidence, and the state of the record was such that, in light of that conflict, the trial court had discretion not to believe his assertion that he did not receive actual notice of the final judgment within twenty days of its signing. Thus, the reasoning in *Latter & Blum* does not control here.

When considering all of the evidence presented to, and known by, the trial court at the time of the postjudgment hearing, we conclude and hold that V.J. did not conclusively prove that he first received actual notice of the final judgment more than twenty days after it was signed, nor does the great weight and preponderance of the evidence compel such a finding; therefore, the trial court's finding that V.J. first received actual notice of the entry of the final judgment on April 5, 2022, is supported by legally and factually sufficient evidence. *See Cath. Diocese of El Paso*, 622 S.W.3d at 834 (matter-of-law standard of review); *Dow Chem. Co.*, 46 S.W.3d at 242 (great-weight-and-preponderance standard). Based on the trial court's finding, V.J.'s May 5, 2022 motion for new trial was untimely and did not extend the trial court's plenary power to grant a new trial or the time for filing a notice of appeal.

Because we lack jurisdiction to consider V.J.'s appeal as a regular appeal, we overrule V.J.'s first issue.[18] *See In re K.M.Z.*, 178 S.W.3d 432, 433 (Tex. App.—Fort

---

[18]We need not review the merits of V.J.'s second and third issues because the trial court did not have plenary power to consider and rule on his untimely motion for new trial. *See* Tex. R. App. P. 47.1; *cf. Middleton v. Murff*, 689 S.W.2d 212, 213 (Tex. 1985) (op. on reh'g) (reiterating that trial court may consider postjudgment motion

Worth 2005, no pet.) (explaining that "[t]he timely filing of a notice of appeal is jurisdictional in this court"). But because V.J. contends in his fourth issue that if we cannot review his notice complaint in a regular appeal, we may consider it as a restricted appeal, we will turn to that issue next.

### 2. Jurisdiction Over Restricted Appeal

This court has jurisdiction to consider V.J.'s appeal as a restricted appeal if (1) he timely filed his notice of appeal for purposes of a restricted appeal; (2) he was a party to the underlying suit; and (3) he did not participate in the hearing that resulted in the complained-of judgment and did not timely file a postjudgment motion, request for findings of fact and conclusions of law, or a notice of appeal within the time permitted by Rule 26.1(a). *See* Tex. R. App. P. 26.1(c), 30; *Ex parte E.H.*, 602 S.W.3d 486, 495–96 (Tex. 2020) (holding that these three requirements for a restricted appeal are jurisdictional).

C.M. agrees that we have no jurisdiction over a regular appeal because the notice of appeal was untimely filed. And she does not dispute that V.J. met the jurisdictional requirements of a restricted appeal. But she urges that V.J. waived his right to a restricted appeal because his notice of appeal does not contain the required information under Rule 25.1(d)(7) and because even after we informed him of the

---

filed outside its plenary power only when it had no jurisdictional power to render the judgment in the first place, i.e., no "power to hear and determine cases of the general class to which the particular one belongs").

25

defect and asked him to file an amended notice of appeal, he refused to do so, claiming specifically that this is not a restricted appeal. Tex. R. App. P. 25.1(d)(7).

The Texas Supreme Court has made clear that, "[r]ather than disposing of appeals based on harmless procedural defects, 'appellate courts should reach the merits of an appeal whenever reasonably possible.'" *Horton v. Stovall*, 591 S.W.3d 567, 567–68 (Tex. 2019) (quoting *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008)). That court has also held that a timely filed notice of appeal that omits the requirements of Rule 25.1(d)(7) nevertheless invokes an intermediate appellate court's jurisdiction over a restricted appeal. *Sweed v. Nye*, 323 S.W.3d 873, 873–75 (Tex. 2010). Although the appellant in *Sweed* subsequently amended the notice of appeal to comply with Rule 25.1(d)(7), that fact did not govern the reasoning supporting the Texas Supreme Court's decision in that case. *See id.* at 874–75.

In light of V.J.'s argument in his brief that we should review the case as a restricted appeal if we determine that we do not have jurisdiction over it as a regular appeal—and based on *Sweed* and the Texas Supreme Court's repeated admonition that we should determine appeals based on their merits, if possible—we will consider this appeal a restricted appeal. *See id.*; *Polk v. Polk*, No. 02-20-00270-CV, 2021 WL 1134412, at *1 n.1 (Tex. App.—Fort Worth Mar. 25, 2021, no pet.) (mem. op.) (noting that when appellant alleged that he had not participated in the trial-court proceedings, this court opted to continue untimely regular appeal "in the event that [he] was trying to pursue a restricted appeal"). We therefore sustain the part of V.J.'s

26

fourth issue in which he argues that we should consider this case as a restricted appeal.

## B.  Restricted-Appeal Standard

To prevail on the merits in a restricted appeal, V.J. must show error apparent from the face of the record.  *See* Tex. R. App. P. 30; *Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 848 (Tex. 2004); *Inlog, Inc. v. Ryder Truck Rental, Inc.*, No. 02-19-00283-CV, 2020 WL 1887846, at *1 (Tex. App.—Fort Worth Apr. 16, 2020, no pet.) (mem. op.).  For restricted-appeal purposes, "[t]he face of the record . . . consists of all the papers on file in the appeal."  *Norman Commc'ns v. Tex. Eastman Co.*, 955 S.W.2d 269, 270 (Tex. 1997).  We may not consider evidence that was not before the trial court when it rendered the final judgment.  *In re S.W.*, 614 S.W.3d 311, 315 (Tex. App.—Fort Worth 2020, no pet.).

## C.  No Lack of Notice

V.J. complains that the record affirmatively shows that he did not receive at least forty-five days' notice of the final trial.

Rule of Civil Procedure 245 provides that the trial court "may set contested cases on written request of any party, or on the court's own motion, with reasonable notice of not less than forty-five days to the parties of a first setting for trial, or by agreement of the parties."  *See* Tex. R. Civ. P. 245.  The forty-five-day notice provision of Rule 245 is mandatory.  *Custom–Crete, Inc. v. K-Bar Servs., Inc.*, 82 S.W.3d 655, 659 (Tex. App.—San Antonio 2002, no pet.); *In re Marriage of Parker*, 20 S.W.3d

27

812, 818 (Tex. App.—Texarkana 2000, no pet.). "A trial court's failure to comply with notice rules in a contested case deprives the defendant of his constitutional right to be present at the hearing, to voice objections in an appropriate manner, and results in a violation of fundamental due process." *M.B. v. R.B.*, No. 02-19-00342-CV, 2021 WL 2252792, at *5 (Tex. App.—Fort Worth June 3, 2021, no pet.) (mem. op.) (quoting *Hildebrand v. Hildebrand*, No. 01-18-00933-CV, 2020 WL 4118023, at *4 (Tex. App.—Houston [1st Dist.] July 21, 2020, no pet.) (mem. op.) (internal quotation omitted)); *Richardson v. Sims*, No. 01-15-01115-CV, 2016 WL 5787291, at *2 (Tex. App.—Houston [1st Dist.] Oct. 4, 2016, no pet.) (mem. op.); *Custom–Crete*, 82 S.W.3d at 659.

Nevertheless, an appellant alleging such a lack of notice carries a heavy burden. *Richardson*, 2016 WL 5787291, at *2. Not only does the law presume that a trial court hears a case only after proper notice to the parties, but also the record generally will not yield affirmative proof of this type of error because "the rules do not impose a duty on the trial court or its personnel to include documentary evidence in the record that notice of a trial setting was given." *Id.* at *2; *see C.H. v. S.L.*, No. 02-16-00386-CV, 2018 WL 4925318, at *8 (Tex. App.—Fort Worth Oct. 11, 2018, no pet.) (mem. op.). Therefore, if the record is silent about whether notice of a trial setting was given in accordance with Rule 245, no error appears on the face of the record. *Richardson*, 2016 WL 5787291, at *2.

The Notice of Final Trial dated February 11, 2022, recites that V.J. had not appeared for a hearing that day. But it also recites, "The parties have been notified that the *final trial* of the above referenced matter is specially set for <u>April 4</u>, 2022[,] at **9:30 o'clock a.m.**[] . . . ." And the final judgment itself states that V.J. was "duly notified." Nothing else in the record up to the time of the final judgment[19] speaks to how or when V.J. was notified.[20] Thus, the record shows that V.J. had notice of the April 4, 2022 final trial as early as February 11, 2022—fifty-two days before the final-trial date.[21] Moreover, even if the final-trial notice and final judgment had not

---

[19]V.J. contends that the April 20, 2022 email correspondence between him and the trial-court coordinator—attached to his second amended motion for new trial—conclusively proves that he did not receive notice from the trial court because the court coordinator replied, "I do not send notices to anyone. It is the responsibility of the person who sets the hearing." However, because this email is attached only to a postjudgment motion, and was not included in the appellate record at the time of the final judgment, we may not consider it in our analysis of V.J.'s fourth issue. *See S.W.*, 614 S.W.3d at 315. Moreover, all it proves is that the court coordinator did not provide such notice.

[20]The trial court's handwritten findings from the trial that day note, "Court finds [that V.J.] is incarcerated at this time. Court finds he opened his email proving notice of these proceedings."

[21]V.J. had not asked for a bench warrant to attend the final trial, nor had he sought to appear by alternative means, and both of his unverified continuance motions asked for additional time solely so that he could hire counsel. Taken together—and considered along with the evidence in the record tending to show proper notice—these facts indicate that V.J.'s failure to appear was not due to lack of notice or ability to attend. *See Brown v. Preston*, No. 01-16-00556-CV, 2017 WL 4171896, at *2–3 (Tex. App.—Houston [1st Dist.] Sept. 21, 2017, no pet.) (mem. op.) (noting that burden is on incarcerated person to show that he is "entitled to appear in person or through alternate means," by requesting such access and providing trial court with sufficient information to evaluate the request); *Smith v. Tex. Bd. of Pardons*

contained representations of proper notice, the record would be merely silent as to whether V.J. received at least forty-five days' notice of the final trial, and he cannot show error on the face of the record in such a case.[22] *See Id.* at *2; *cf. Alexander*, 134 S.W.3d at 849–50 (addressing whether "failure of the record to affirmatively show that notice of the pre-trial hearing was sent to counsel or that notice of the order dismissing the case was sent to counsel at a particular address is error on the face of the record"); *S.W.*, 614 S.W.3d at 315 n.6 (addressing lack of notice of final trial); *Hewitt v. Gan*, No. 05-18-00913-CV, 2019 WL 2402984, at *2 (Tex. App.—Dallas June 7, 2019, no pet.) (mem. op.) (holding, in regular appeal, that silent record did not affirmatively show lack of required forty-five days' notice).

We hold that V.J. has not shown that the record affirmatively establishes that he did not receive sufficient notice of the final trial under Rule 245. Therefore, he

*& Paroles*, No. 2-02-035-CV, 2003 WL 22724996, at *1 (Tex. App.—Fort Worth Nov. 20, 2003, no pet.) (per curiam) (mem. op.) (holding that incarcerated pro se appellant who provided no evidence "demonstrating that he requested a bench warrant, that he otherwise sought or was denied access to the trial court, or that he raised this issue by motion, objection, or other complaint in the trial court" failed to preserve a complaint that he was denied access to the court).

[22]In his unverified motion and amended motion for a continuance, V.J. did not allege that he had not received sufficient notice. Instead, he claimed that he needed more time to hire counsel. As C.M. points out in her brief, V.J.'s notice argument is, in effect, an argument that the trial court should have continued the final trial so that he could hire counsel. Because V.J. did not swear to the facts in these motions, the trial court did not abuse its discretion by denying them. *See* Tex. R. Civ. P. 251; *In re J.S.*, No. 2-04-277-CV, 2005 WL 1693537, at *2 (Tex. App.—Fort Worth July 21, 2005, no pet.) (mem. op.).

cannot show error on the face of the record. We overrule the remainder of V.J.'s fourth issue.

## D. Temporary Orders

In his fifth issue, V.J. contends that he has shown error on the face of the record because the trial court did not require the court reporter to record the temporary-orders hearings held on September 13, 2021; September 24, 2021; and October 12, 2021. *See* Tex. Fam. Code Ann. § 105.003(c). He also challenges the trial court's substantive rulings in those temporary orders. A temporary order is superseded by entry of a final order, rendering moot any complaint about the temporary order. *In re A.C.*, No. 02-21-00121-CV, 2022 WL 1793419, at *3 (Tex. App.—Fort Worth June 2, 2022, no pet.) (mem. op.); *In re A.K.*, 487 S.W.3d 679, 683 (Tex. App.—San Antonio 2016, no pet.). We may not decide moot controversies. *Moates v. Abbott*, No. 02-22-00158-CV, 2022 WL 7231981, at *2 (Tex. App.—Fort Worth Oct. 13, 2022, no pet.) (mem. op.). Accordingly, we overrule V.J.'s fifth issue.[23]

## IV. CONCLUSION

Having sustained part of V.J.'s fourth issue only insofar as to construe this appeal as a restricted appeal, and having overruled the remainder of his fourth issue and his first and fifth issues, we affirm the trial court's judgment.

---

[23]V.J. does not challenge the sufficiency of the evidence to support the trial court's final judgment, which was rendered after a recorded, thirty-seven-page evidentiary hearing, at which the trial court admitted thirteen exhibits.

/s/ Dana Womack

Dana Womack
Justice

Delivered:  August 10, 2023